# GRAVES *v.* CORBIN.

## FIRST NATIONAL BANK OF CHICAGO *v.* CORBIN.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

Nos. 155, 980. Argued December 10, 12, 13, 1889. — Decided January 6, 1890.

A bill in equity was filed in a state court by a creditor of a partnership to reach its entire property. The prayer of the bill was that judgments

confessed by the firm in favor of various defendants, some of whom were citizens of the same State with the plaintiff, might be set aside for fraud. On the allegations of the bill there was but a single controversy, as to all of the defendants. One of the defendants, who was a citizen of a different State from the plaintiff, removed the entire cause into a Circuit Court of the United States. After a final decree for the plaintiff, and on an appeal therefrom, this court held that the case was not removable under § 2 of the act of March 3, 1875, 18 Stat. 470, and reversed the decree, and remanded the case to the Circuit Court, with a direction to remand it to the state court, the costs of this court to be paid by the petitioner for removal.

IN EQUITY. The cause was argued in full on the merits. The case is stated in the opinion.

*Mr. J. M. Flower,* for appellant, to the question of jurisdiction cited: *Capron* v. *Van Noorden,* 2 Cranch, 126; *Breithaupt* v. *Bank of the State of Georgia,* 1 Pet. 238; *Brown* v. *Keene,* 8 Pet. 112; *American Bible Society* v. *Price,* 110 U. S. 61; *Sewing Machine Co. Case,* 18 Wall. 553; *Vannevar* v. *Bryant,* 21 Wall. 41.

*Mr. William J. Manning,* for appellee, to the same point cited: *Langdon* v. *Fogg,* 18 Fed. Rep. 5; *Kerling* v. *Cotzhausen,* 16 Fed. Rep. 705; *Sheldon* v. *Keokuk Northern Line Packet Co.,* 9 Bissell, 307; *Barney* v. *Latham,* 103 U. S. 205; *Des Moines Navigation Co.* v. *Iowa Homestead Co.,* 123 U. S. 552; *Bushnell* v. *Kennedy,* 9 Wall. 387; *Edwards* v. *Conn. Mut. Life Ins. Co.,* 20 Fed. Rep. 452.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

On the 1st of March, 1883, Chester C. Corbin filed a bill in equity in the Circuit Court of Cook County, in the State of Illinois, against William A. Boies, Benjamin B. Fay, Lucius W. Conkey and Julius K. Graves, who had composed the limited partnership of Boies, Fay & Conkey, in which Graves was the special partner and the three others were the general partners, the partnership being formed under a statute of Illinois, and doing business in Chicago, as wholesale grocers and importers. The First National Bank of Chicago, Illinois,

Alvin F. Shumway, The Bay State Sugar Refining Company of Massachusetts, The First National Bank of Westboro', Massachusetts, Walter Potter, James M. Flower, Curtis H. Remy and Stephen S. Gregory, the last three being a firm of attorneys-at-law, under the name of Flower, Remy & Gregory, Seth F. Hanchett, sheriff of Cook County, Illinois, and twenty-one other persons and corporations were also made defendants to the bill.

The bill set out that the plaintiff was the creditor of the said limited partnership, as being the owner of two promissory notes made and endorsed by it, and made the following averments : The limited partnership carried on business at Chicago from March, 1882, until January, 1883, and contracted debts during that time amounting to about $400,000. On the 13th of January, 1883, its assets were insufficient to pay more than about 50 cents on the dollar of its liabilities, and during the time named it borrowed large sums of money, by loans and discounts of commercial paper made by it. On or about December 2, 1882, the members of the partnership, knowing it to be insolvent, and with the intent to hinder, delay and defraud such of its creditors as they did not see fit to prefer, and in contemplation of its insolvency, and with the intent to prefer certain of their creditors, or pretended creditors, and to evade the provisions of the statute of Illinois, pretended to dissolve the partnership, and recorded in the office of the county clerk of Cook County a paper purporting to be a dissolution of it ; but the paper was a mere device contrived by them to evade the provisions of the statute, and to give color of validity to the acts of Fay and Conkey, thereinafter set forth, in executing the judgment notes, warrants of attorney, and confessions of judgment thereinafter described. After the pretended dissolution Fay and Conkey pretended to carry on the business under the firm name of " Fay & Conkey," and assumed to be the owners of all the assets of the limited partnership. Boies and Graves pretended to release and convey to Fay and Conkey all their interest in such assets ; but such release was void as against the creditors of the limited partnership. By the statute of Illinois, under which the partnership

was formed, all of its assets were pledged to the payment of its debts ratably, and it was the duty of the four partners, when they first had knowledge of 'its insolvency, or at the time of its pretended dissolution, to appoint a trustee to take charge of its assets and convert them into money and distribute the same ratably among its creditors. Fay and Conkey, on or about the 22d of January, 1883, in pursuance of said fraudulent scheme, executed in favor of six of the defendants seven promissory notes, payable on demand, with warrants of attorney annexed to confess judgment for such amount as might appear to be unpaid thereon, with costs and five per cent attorneys' fees, the notes amounting to $91,353.18, of which one note, for $40,000, was in favor of the First National Bank of Chicago, and one note, for $17,500, was in favor of the defendant Graves. On the 22d of January, 1883, judgments were entered in the Superior Court of Cook County, Illinois, against Fay and Conkey upon each of the seven notes, together with the costs and five per cent attorneys' fees, in favor of the six defendants mentioned, there being seven judgments in all, amounting in the aggregate to $95,965.83, of which one judgment was in favor of the First National Bank of Chicago, for $42,000, and one in favor of Graves, for $18,375. On or about the 22d of January, 1883, Fay and Conkey, in further pursuance of said fraudulent scheme, executed in favor of fifteen of the defendants fifteen promissory notes, payable on demand, with warrants of attorney to confess judgment annexed, amounting in the aggregate to $120,999 61, of which one note, for $27,000, was made in favor of Graves, one for $6990 in favor of Shumway, one for $10,000 in favor of The Bay State Sugar Refining Company of Massachusetts, one for $12,000 in favor of the First National Bank of Westboro', Massachusetts, and one for $4300 in favor of Potter. On the 22d of January, 1883, or between that day and the 26th of January, 1883, inclusive, there were entered in the Circuit Court of the United States for the Northern District of Illinois judgments against Fay and Conkey upon each of the last named fifteen notes, in pursuance of said warrants of attorney, together with the costs and five per cent attorneys' fees, in

favor of fifteen of the defendants, amounting in the aggregate to $127,044.61, of which judgments one was in favor of Graves for $28,350, one in favor of Shumway for $7339.50, one in favor of The Bay State Sugar Refining Company for $10,500, one in favor of the First National Bank of Westboro', Massachusetts, for $12,600, and one in favor of Potter for $4515. On or about the 22d of January, 1883, and immediately after the entry of the judgments in the Superior Court of Cook County, the defendants Flower, Remy and Gregory, as attorneys for the defendants Boïes, Fay, Conkey and Graves, and as attorneys of record for the respective plaintiffs in those judgments, caused execution to be issued on each of them against the property of Fay and Conkey, to the sheriff of Cook County, who, by direction of the attorneys, seized and levied on a large quantity of merchandise, of the value of about $75,000, part of the assets of the limited partnership. The levy and seizure were made in further pursuance of said fraudulent scheme, and with intent to delay, hinder and defraud the plaintiff and other creditors of the limited partnership, and to give a preference to each of the defendants in whose favor the judgments were entered. The sheriff has sold the property seized, with the exception of about $12,000 worth which was replevied, and has in his possession about $54,000 as the proceeds of said sales. Immediately after four of the judgments in the Circuit Court of the United States for the Northern District of Illinois were entered, namely, that in favor of the Commercial National Bank of Dubuque, Iowa, for $14,962.50, that in favor of Graves for $28,350, that in favor of the Dubuque County Bank of Dubuque, Iowa, for $12,495, and that in favor of the Importers' and Traders' National Bank of New York City for $16,800, the defendants Flower, Remy and Gregory, on the 22d of January, 1883, as the attorneys of Boïes, Fay, Conkey and Graves, and as the attorneys of the plaintiffs in those four judgments, caused execution to be issued on each of them, directed to the marshal of the district, against the property of Fay and Conkey. The marshal, on the same day, returned those executions *nulla bona.* Thereupon, Flower, Remy and Gregory, as attorneys

for the plaintiffs in those four judgments, filed a creditors' bill in the Circuit Court of the United States for the Northern District of Illinois, alleging divers frauds on the part of Fay and Conkey, and praying for the appointment of a receiver. That court appointed as receiver the defendant Hancock, a brother-in-law of Flower, and the books of account and assets of the limited partnership were delivered to him by Fay and Conkey, and he has possession of them, and is collecting them, the drafts, notes, accounts and choses in action amounting to more than $210,000. Immediately after the entry of the judgments in the Circuit Court of the United States in favor of seven of the defendants, including Shumway, The Bay State Sugar Refining Company, the First National Bank of Westboro', and Potter, Flower, Remy and Gregory, as attorneys of Boies, Fay, Conkey and Graves, and as attorneys for the plaintiffs in said seven judgments, caused executions to be issued upon them to the marshal, against the property of Fay and Conkey. The marshal returned them *nulla bona*, and thereupon Flower, Remy and Gregory, as such attorneys and on behalf of the plaintiffs in the seven judgments, filed a creditors' bill in the said Circuit Court of the United States, alleging that Fay and Conkey had concealed their property, and praying the appointment of a receiver. Hancock was appointed such receiver, or his first receivership was extended. The judgments in the Circuit Court of the United States were rendered in pursuance of the said fraudulent scheme on the part of Boies, Fay, Conkey and Graves. Upon the entry of each of the judgments before mentioned, there was added to and included therein a sum equal to five per cent of the original demand on which the judgment was rendered, as attorneys' fees for the entry thereof, the aggregate amount of such attorneys' fees being $10,657.65. That amount was an excessive charge for the service, and was charged for the purpose of absorbing to that extent the assets of the limited partnership, and Fay and Conkey are interested therein, and have some secret agreement with said attorneys for a division of that sum. Flower, Remy and Gregory are and have been the attorneys of Boies, Fay, Conkey and Graves, and are the

attorneys of Hancock, receiver. The plaintiff has applied to Hancock, receiver, for an examination of the books of the limited partnership, for the purpose of ascertaining what settlement, if any, Boies, Fay and Conkey had made with Graves, or what settlement Fay and Conkey had made with Boies; but Hancock refused such examination, and said that such refusal was in accordance with directions given him by Flower, Remy and Gregory, as his attorneys. The judgments so entered on confession are, or some one or more of them is or are, fictitious, and rendered for more than was due to the plaintiffs therein respectively; and this excess is alleged to exist in regard to twenty-two of the judgments, including the two in favor of Graves and those in favor of the First National Bank of Chicago, Shumway, The Bay State Sugar Refining Company, the First National Bank of Westboro', Massachusetts and Potter. Fay and Conkey, at the time the notes and warrants of attorney were made and the judgments were entered, knew that the limited partnership was insolvent; and they executed the notes and warrants, and confessed the judgments, with the intention of paying and securing to each of the persons in whose favor the notes and warrants were executed and the judgments were confessed a preference over any other creditors of the limited partnership. The confessions were unlawful acts, prohibited by the statute of Illinois, and the judgments, and all acts done in pursuance thereof, and all process issued thereon, and all acts done under such process, are void. None of the persons or firms in whose favor the notes were given knew of the execution of them until after judgment had been entered thereon, and all of the judgments were entered without the knowledge or consent of the persons mentioned as plaintiffs therein. None of the notes were made in the ordinary course of business, but they were all made with intent on the part of Fay and Conkey to carry out the said fraudulent scheme; and all of the judgments were entered by Flower, Remy and Gregory, by direction of Fay and Conkey or of Fay. The property so taken on execution by the sheriff of Cook County, and the assets so transferred to the possession of Hancock, as receiver, consti-

tute the whole of the assets of the limited partnership; and
its *bona fide* debts amount to about $400,000.

The bill waives answers on oath, and prays for a decree that
the pretended transfer of the assets of the limited partnership
to Fay and Conkey was fraudulent and void ; that each of the
judgments so entered on confession, the executions issued and
the proceedings thereon, or on their return, and everything
done under the judgments and executions, or in any suit based
on any of the judgments, and every sale or transfer involving
any of them, be declared void ; that it be decreed that all of
the goods levied upon under the executions, and the assets
taken possession of by Hancock as receiver, are the property
of the limited partnership, and as such subject to the lien, and
charged with the payment, of the debt due to the plaintiff,
and all other debts owed by the limited partnership, ratably ;
that each of the defendants be decreed to pay to the receiver
to be appointed in this suit whatever money they have re-
ceived by virtue of their respective judgments or any suit
based thereon, out of said property ; that such money and all
moneys realized by such receiver from the assets of the limited
partnership be paid to its creditors ratably ; that such receiver
be appointed to convert the property into money and distribute
it; that the defendants Flower, Remy, Gregory and the
sheriff be temporarily enjoined from paying over to any per-
son any proceeds of the property of the limited partnership,
which they now have or may hereafter receive under any of
said judgments, executions or creditors' bills; and that such
injunction be made perpetual on a hearing.

Boies, Fay, Conkey, the First National Bank of Chicago,
Flower, Remy and Gregory, the sheriff of Cook County and
four others of the defendants, were served with a summons.
Flower, Remy and Gregory entered an appearance in the suit
for Boies, Fay and Conkey on the 21st of March, 1883, and on
the 2d of April, 1883, also entered an appearance for them-
selves, the sheriff of Cook County and two others of the
defendants.

On the 2d of April, 1883, Flower, Remy and Gregory, as
solicitors for the defendant the First National Bank of Chicago,

served on the solicitors for the plaintiff a notice that, on the 4th of April, 1883, they would present to the Circuit Court of Cook County a petition and bond, on behalf of that bank, for the removal of the cause to the Circuit Court of the United States for the Northern District of Illinois, and ask for an order removing the cause.

The petition and bond were presented, both of them dated April 2, 1883. The petition was sworn to by the defendant Flower, one of the firm of Flower, Remy & Gregory, who also executed the bond as surety. The petition is made by the First National Bank of Chicago, Illinois, and is entitled in the suit, naming as defendants those against whom the bill prays process. It states "that the controversy in said suit is between citizens of different States, and that your petitioner was at the time of the commencement of this suit and still is a citizen of the State of Illinois; that Chester C. Corbin, the complainant, was then and still is a citizen of the State of Massachusetts;" that twelve of the defendants "were then and still are citizens of the State of Illinois;" that four of them "were then and still are citizens of the State of Iowa;" that one of them was then and still is a citizen of the State of New York; one, of the State of Ohio; two, of the State of Michigan; three, of the State of Wisconsin; one, of the State of Colorado; "that the defendants, The Bay State Sugar Refining Company, the First National Bank of Westboro', Alvin F. Shumway and Walter Potter, were then and still are citizens of the State of Massachusetts;" and that "in the said suit above mentioned there is a controversy which is wholly between citizens of different States, and which can be fully determined as between them, to wit, a controversy between the said petitioner, who is a citizen of the State of Illinois, and the said complainant, Chester C. Corbin, who is a citizen of the State of Massachusetts."

No order appears to have been made by the state court on the presentation of the petition and bond, but the clerk of that court on the 9th of April, 1883, signed a certificate under its seal to a transcript of the record in that court, which was filed in the Circuit Court of the United States for the North-

ern District of Illinois on the 11th of April, 1883; and the cause has since proceeded in the latter court.

The cause was put at issue, proofs were taken by the respective parties, and, on the 17th of November, 1885, a decree was made by the court, finding as facts that on or about the 20th of August, 1882, the limited partnership composed of Boies, Fay, Conkey and Graves was insolvent, and so continued to the termination of its business, with the knowledge of each of the members thereof; that, with such knowledge, such members continued to do business until the 22d of January, 1883, when Fay and Conkey, assuming to be successors of Boies, Fay & Conkey, confessed seven judgments in the Superior Court of Cook County, one of them in favor of the First National Bank of Chicago and one in favor of Graves, and fifteen judgments in the said Circuit Court of the United States, one of them in favor of Graves, one in favor of The Bay State Sugar Refining Company, one in favor of Shumway, one in favor of the First National Bank of Westboro', Massachusetts, and one in favor of Potter; that the members composing the limited partnership of Boies, Fay & Conkey went through the form of a dissolution thereof, for the purpose of defeating the statute of Illinois which prohibited insolvent limited partnerships from preferring creditors, and to defraud a part of their creditors; that such partnership was still subsisting at the time of the confession and entry of each of the judgments; that the judgments were confessed to prefer certain creditors, but chiefly to save Graves from loss on account of said partnership or on account of liabilities incurred by him on commercial paper made by or on behalf of it; that immediately after the judgments were entered in the Superior Court of Cook County, Graves and Fay caused executions to be issued thereon to the sheriff of that county, who levied them on all the stock in trade and merchandise of the limited partnership and sold the property at public sale, and with its proceeds, on February 26, 1883, paid to the First National Bank of Chicago, on its judgment, $40,000, and on the same day paid to Graves, on his judgment in the Superior Court of Cook County, $9791.18; that the defendants Flower, Remy

and Gregory were employed as counsel by the limited partnership, and by Graves on his own behalf, to enter the judgments by confession, and to advise and represent the said firm and Graves in and about all matters and things affecting it and Graves, and received from them $2500 for services rendered and to be rendered in that behalf; that each of the judgments was confessed for the full amount due the several preferred creditors, and in some cases for more than was due, and for five per cent in addition thereto for attorneys' fees, which latter amount was intended as a provision for Flower, Remy and Gregory out of the assets of the limited partnership; and that they received without right, out of such assets, on account of attorneys' fees, $8559.80.

The decree further found that Fay and Conkey had each taken from the assets of the firm, and fraudulently appropriated to his own use, certain specified sums of money; that Graves had, on the 21st and 22d days of January, 1883, fraudulently appropriated to his own use drafts and checks belonging to the limited partnership, amounting to $2741.38; that on the 22d and 23d days of January, 1883, and after the levy of the executions aforesaid, Flower, Remy and Gregory collected drafts and checks belonging to the limited partnership, amounting to $1927.96, which they still held; that the judgments in favor of the Dubuque County Bank, the Commercial National Bank and the Importers' and Traders' National Bank were confessed at the special instance of Graves; that the judgment in favor of the Commercial National Bank was not an indebtedness due from the limited partnership to the bank; that Graves owes that partnership a sum equal to its assets which had been applied by his direction in payment of the last-named three judgments; that in a creditors' suit brought by Graves and the last-named three banks against Fay and Conkey, Hancock as receiver, and with the funds in his hands as such, paid to said three banks in the aggregate $41,525.59, and to Graves, on his judgment in the Circuit Court of the United States, $27,232.50; that in a certain other suit by creditors' bill in said Circuit Court of the United States, wherein The Bay State Sugar Refining

Company, Shumway, the First National Bank of Westboro', Massachusetts, Potter and three- other persons were plaintiffs, and Fay and Conkey were defendants, and in which also Hancock was receiver, he paid, out of the assets in his hands as such receiver, to The Bay State Sugar Refining Company, on its judgment, $2000, to that company on the judgment in favor of Shumway, $1398, to the First National Bank of Westboro', on its judgment, $2400, to Potter, on his judgment, $860, and to· the other three persons $2060 in all; that the two creditors' bills above named, one brought by the Commercial National Bank and others, and the second brought by The Bay State Sugar Refining Company and others, were each brought and prosecuted with· the intention of defrauding the creditors of the. limited partnership of their just rights; that Fay and Conkey consented to the filing of said bills and the appointment of a receiver thereunder; and that the limited partnership was indebted to the plaintiff in the sum of $4359.31.

The ·decree then proceeded to adjudge that. all the property and effects held by the limited partnership on the 20th of August, 1882, and subsequently thereto, and when the judgments were confessed, were a special trust fund for the payment of the firm debts ratably among its creditors; that Graves pay to the clerk of the court within thirty days, for the benefit of the plaintiff and such other creditors ·of the limited partnership as should prove their right to share in the distribution of the assets of the firm, $100,796.71, with interest; that Flower, Remy and Gregory in like manner pay to the clerk.of the court $9886.57; that Fay and Conkey pay in like manner $2728.92; that execution issue against the property of such defendants respectively, in case of non-payment; referring it to a master to take proof of the debts of the creditors of the limited partnership; charging Graves, · Fay and Conkey with the costs of the cause; and reserving all matters not decreed upon, including the right to decree against the creditors in whose favor the judgments were confessed, with leave to the plaintiff to apply for such further order as might be necessary in relation to any matter not finally determined by that decree.

Graves and Flower, Remy and Gregory prayed separate appeals to this court, which were allowed. The appeal of Flower, Remy and Gregory was afterwards dismissed while it was pending in this court.

On the 23d of January, 1888, the plaintiff and other creditors of the limited partnership, having proved their claims before the master to the amount of $125,737.34, (and the master having reported in favor of said claims on the 9th of July, 1886,) filed a petition in the cause, stating that Graves had failed to pay any part of the amount decreed against him; that but very little more had been realized under the decree of November 17, 1885, than sufficient to pay the costs, expenses and solicitors' fees incurred in the suit; and that the petitioners insisted that, under the proofs already taken, they were entitled to a decree against the First National Bank of Chicago for $50,000. They therefore prayed for a decree against that bank, requiring it to pay, within thirty days, to the receiver in the cause, $50,000, with interest at six per cent per annum from March 1, 1883.

On the 23d of April, 1888, the Circuit Court, held by Judge Gresham, delivered an opinion, (34 Fed. Rep. 692,) in which it recited the grounds on which the decree of November 17, 1885, had been made, and ordered a decree against the First National Bank of Chicago.

The decree was entered on the 3d of May, 1888. It found that on the judgment for $40,000 in favor of the bank, confessed by Fay and Conkey as successors of the limited partnership, on January 22, 1883, the bank had, on or about February 26, 1883, received out of the sale of the assets of that partnership by the sheriff, on an execution in its favor, $38,708.35; that at the time of the pretended dissolution of the partnership, in October, 1882, and on the 2d of December, 1882, and later, the bank knew that such partnership was insolvent and unable to pay all its creditors, and knew that the contract for its dissolution was a pretended one and entered into for the purpose of protecting Graves from liability as special partner and as endorser for the firm; that the bank co-operated with the members of the partnership for the accom-

plishment of such purpose; and that the judgment was confessed for that purpose, and to obtain an illegal preference over other creditors. It decreed that the bank pay to the receiver within thirty days the sum so received, with interest at six per cent from February 26, 1883, amounting in all to $50,721.95; and that, if it were not paid, execution should issue against the property of the bank.

The bank prayed an appeal to this court. The record on the appeal of Graves was filed in this court October 11, 1886, and the record on the appeal of the bank was filed October 17, 1888.

Both of the appeals have been argued in full on the merits. But the preliminary question arises as to the jurisdiction of the Circuit Court in the case, by virtue of the removal of the cause from the state court on the petition of the bank; and the point is taken by the respective appellants that the Circuit Court acquired no jurisdiction, because at the time of the commencement of the suit and at the time of its removal, as appears by the petition for removal, the plaintiff and four of the defendants, namely Shumway, Potter, The Bay State Sugar Refining Company and the First National Bank of Westboro', were all of them citizens of Massachusetts. The determination of this question must depend upon whether, at the time of the commencement of the suit, there was a separable controversy between the plaintiff and the petitioner for removal, the First National Bank of Chicago. If there was but a single controversy in the entire cause, of course there could be no separable controversy between the plaintiff and the bank.

By section 2 of the act of March 3, 1875, c. 137, 18 Stat. 470, under which the removal took place, it was provided that when, in any suit mentioned in the section, "there shall be a controversy which is wholly between citizens of different States, and which can be fully determined as between them, then either one or more of the plaintiffs or defendants actually interested in such controversy may remove said suit into the Circuit Court of the United States for the proper district." The petition for removal states that in the suit "there is a

controversy which is wholly between citizens of different States, and which can be fully determined as between them," namely, a controversy between the plaintiff and the bank. But we are of opinion that there was in the suit but a single controversy, and that that controversy was not wholly between citizens of different States. There were various branches of the controversy, various defendants and various claims by the several defendants; but the controversy was between the plaintiff on the one side, and the defendants who were alleged by the bill to have claims adversely to the plaintiff against the property of the limited partnership, as a whole, on the other side.

The case as made by the bill, and as it stood at the time of the petition for removal, is the test of the right to removal. The bill was filed to reach the entire property of the limited partnership. In order to do that, it was necessary to sweep away not some but all of the confessed judgments and all the rights obtained by executions and levies thereunder, and to restore to the assets and moneys of the partnership in the hands of the court the assets and moneys which had been fraudulently diverted therefrom by the members of the partnership, with the co-operation of the various defendants. The bill states that promissory notes were given in favor of the four defendants who were citizens of Massachusetts; that judgments on confession, in pursuance of warrants of attorney, were rendered in the Circuit Court of the United States for the Northern District of Illinois, against Fay and Conkey, in favor of the four Massachusetts defendants; that, immediately after the entry of those judgments, Flower, Remy and Gregory, as the attorneys of the members of the limited partnership, and as the attorneys of record for the plaintiffs in those judgments, caused executions to be issued thereon to the marshal of the district, against the property of Fay and Conkey; that the same were returned *nulla bona;* that, thereupon, Flower, Remy and Gregory, as such attorneys, and on behalf of the plaintiffs in said four judgments and in three others, filed a creditors' bill in the Circuit Court of the United States, to reach the property of Fay and Conkey, in

which suit a receiver was appointed; that the said four judgments were entered in pursuance of the fraudulent scheme alleged in the bill, on the part of the members of the limited partnership, to hinder, delay and defraud its creditors, and evade the provisions of the statute of Illinois, and to prefer the plaintiffs in those several judgments over other creditors; that the four judgments in favor of the citizens of Massachusetts were largely in excess of the amount due to them respectively at the time of the entry of the judgments; and that those judgments are void. It prays for a decree declaring the four judgments to be void, and directing the payment to the receiver of all moneys received by such four defendants under the judgments or under any proceedings based thereon. These allegations, with the others contained in the bill, made but a single controversy, as to all of the defendants. The relief asked could not have been granted unless all who were made defendants were parties. Therefore, all of them were necessary parties.

In *Brinkerhoff* v. *Brown*, 6 Johns. Ch. 139, it was held that a creditors' bill could be filed against several persons relative to matters of the same nature, forming a connected series of acts, all intended to defraud and injure the plaintiffs, and in which all the defendants were more or less concerned, though not jointly in each act. The case there arose on a demurrer to the bill. It was urged that the bill was multifarious in uniting all the defendants and distinct and unconnected matters. Fraud was charged against the five trustees of the Genesee Company, in confessing judgments and causing the property of the company to be sold. There was a charge of a combined fraud, affecting seven of the defendants, two of whom were not concerned in every part of the fraudulent conduct. All the acts sought to be impeached were alleged to have been done with a fraudulent intent as respected creditors. The court says: "There was a series of acts on the part of the persons concerned in this Genesee Company, all produced by the same fraudulent intent and terminating in the deception and injury of the plaintiffs. The defendants performed different parts in the same drama; but it was still one piece — one entire per-

formance, marked by different scenes; and the question now occurs, whether the several matters charged are so distinct and unconnected as to render the joining of them in one bill a ground of demurrer." The court then reviews the leading cases on the subject, and says that the principle to be deduced from them is, " that a bill against several persons must relate to matters of the same nature and having a connection with each other, and in which all the defendants are more or less concerned, though their rights in respect to the general subject of the case may be distinct;" that the general right claimed by the bill was a due application of the capital of the company to the payment of the judgments of the plaintiffs ; that the subject of the bill and of the relief, and the only matter in litigation, was the fraud charged in the creation, management and disposition of the capital of the company; that in that charge all the defendants were implicated, though in different degrees and proportions; and that the case fell within the reach of the principle stated, and the demurrer could not be sustained.

This ruling of Chancellor Kent was considered, recognized and approved by the Court of Errors of New York, without a dissenting voice in *Fellows* v. *Fellows*, 4 Cowen, 682. See, also, *New York & New Haven Railroad* v. *Schuyler*, 17 N. Y. 192, and 34 N. Y. 30.

The principle above stated has been applied by this court, in considering the question of removal, in cases like the present.

In *Ayers* v. *Chicago*, 101 U. S. 184, a bill was filed in a state court of Illinois, by the city of Chicago against citizens of Illinois, to enforce a deed of trust. A citizen of Alabama, having a judgment against one of the defendants, and claiming a lien on the property covered by the deed of trust, was admitted as a party defendant to the suit, and filed a cross-bill to enforce such lien, and removed the suit into the Federal Court, on the ground that in the original suit there was a controversy wholly between him and the original plaintiff, and that in the cross-suit the controversy was wholly between citizens of different States. The cause was remanded, and on appeal this court affirmed that decision, saying that the original bill and the cross-bill constituted one suit; that the intervener

was allowed to take part in a controversy between the city and the debtor ; that he had no dispute with the debtor, and none separably with the city ; that he and the debtor had a controversy with the city as to its lien on the property ; that the debtor, who was on the same side of the controversy with him, was a citizen of the same State with the city; and that, such being the case, the suit was not removable.

In *Fidelity Ins. Co.* v. *Huntington*, 117 U. S. 280, it was held that a creditors' bill to subject incumbered property to the payment of the judgment of the creditor, by selling it and distributing its proceeds among lien-holders according to priority, created no separate controversy as to the separate lien-holders, parties defendant, within the meaning of the removal act, although their respective defences might be separate. The court said : " The suit as brought by Huntington is a creditor's bill to subject incumbered property to the payment of his judgment, by a sale and distribution of the proceeds among lien-holders according to their respective priorities. There is but a single cause of action, and that is the equitable execution of a judgment against the property of the judgment debtor. This cause of action is not divisible. Each of the defendants may have a separate defence to the action, but we have held many times that separate defences do not create separate controversies within the meaning of the removal act. *Louisville & Nashville Railroad* v. *Ide*, 114 U. S. 52 ; *Putnam* v. *Ingraham*, 114 U. S. 57 ; *Pirie* v. *Tvedt*, 115 U. S. 41 ; *Starin* v. *New York*, 115 U. S. 248 ; and *Sloane* v. *Anderson*, 117 U. S. 275. The judgment sought against the Fidelity Company is incident to the main purpose of the suit ; and the fact that this incident relates alone to this company does not separate this part of the controversy from the rest of the action. What Huntington wants is not partial relief, settling his rights in the property as against the Fidelity Company alone, but a complete decree, which will give him a sale of the entire property, free of all incumbrances, and a division of the proceeds as the adjusted equities of each and all the parties shall require. The answer of this company shows the questions that will arise under this branch of the one controversy,

but it does not create another controversy. The remedy which Huntington seeks requires the presence of all the defendants, and the settlement, not of one only, but of all the branches of the case."

To the cases above cited may be added *Plymouth Mining Co.* v. *Amador Canal Co.*, 118 U. S. 264; *Little* v. *Giles*, 118 U. S. 596, 601; *East Tennessee Railroad* v. *Grayson*, 119 U. S. 240; *Brooks* v. *Clark*, 119 U. S. 502, 511; *Laidly* v. *Huntington*, 121 U. S. 179; *Peninsula Iron Co.* v. *Stone*, 121 U. S. 631; *Thorn Wire Hedge Co.* v. *Fuller*, 122 U. S. 535; and *Young* v. *Parker's Administrator*, *ante*, 267. The transcript of the record from the state court in the present case was filed in the Circuit Court of the United States on the 11th of April, 1883. The decisions of this court above cited were all but one of them made at and after October term, 1884.

There is nothing in the record before us which shows that the question of the removability of the present case, on the petition for removal which was filed, was raised in the Circuit Court, either at the time the transcript from the state court was presented to be filed, or afterwards by a motion to remand, except what may be inferred from a statement in the record in the Graves case, at the conclusion of the testimony of a witness taken April 6, 1883, that the counsel for the plaintiff stated that he had been before Judge Drummond, in the United States Circuit Court for the Northern District of Illinois, and the judge had taken jurisdiction of the cause under the petition for removal by the First National Bank of Chicago. We find reported, however, the case of *Corbin* v. *Boies*, 18 Fed. Rep. 3, the present case, where Judge Drummond, in an opinion which appears to have been given on an application to order the transcript from the state court to be filed in the Circuit Court and the case to be docketed in the latter court, held that there was in the case a controversy which was wholly between the plaintiff and the First National Bank of Chicago, namely, a controversy as to whether the judgment in favor of that bank was a valid judgment as against the limited partnership, and the plaintiff as one of its creditors; and that the bank was not interested in any contro-

versy which the plaintiff might have with other creditors of the firm. But, as already shown, this view was erroneous.

Under the provision of section 5 of the act of March 3, 1875, 18 Stat. 472, that if, in any suit removed from a state court to a Circuit Court of the United States, it shall appear to the satisfaction of said Circuit Court, at any time after such suit has been removed thereto, that it does not really and substantially involve a dispute or controversy properly within the jurisdiction of said Circuit Court, it shall proceed no further therein, but shall remand the suit to the court from which it was removed, as justice may require, this court has held that when it appears to this court that the case is one of which, under that provision, the Circuit Court should not have taken jurisdiction, it is the duty of this court to reverse any judgment given below, and remand the cause with costs against the party who wrongfully invoked the jurisdiction of the Circuit Court. *Williams* v. *Nottawa*, 104 U. S. 209. This rule has been recognized by this court to the extent even of taking notice of the want of jurisdiction in the Circuit Court, although the point has not been formally raised in that court or in this court, in *Turner* v. *Farmers' Loan & Trust Co.*, 106 U. S. 552, 555; *Mansfield &c. Railroad* v. *Swan*, 111 U. S. 379, 386; *Farmington* v. *Pillsbury*, 114 U. S. 138, 144; and *King Bridge Co.* v. *Otoe Co.*, 120 U. S. 225, 226.

In *Stevens* v. *Nichols*, 130 U. S. 230, it was held that if a proper diversity of citizenship does not appear by the record to have existed both at the commencement of the suit and at the time of filing the petition for removal, this court will remand the cause to the Circuit Court with directions to send it back to the state court, with costs against the party at whose instance the removal was made. This same principle was asserted in *Crehore* v. *Ohio & Mississippi Railroad*, 131 U. S. 240, where it was also held that where a suit is entered upon the docket of a Circuit Court as removed on the ground of the diverse citizenship of the parties, and was never in law removed, no amendment of the record made in the Circuit Court can affect the jurisdiction of the state court, or put the case rightfully on the docket of the Circuit Court as of the date when it was so docketed.

This same rule was applied at the present term, in *Jackson* v. *Allen*, *ante*, 27, where the judgment of the Circuit Court was reversed at the cost of the parties who attempted to remove the cause, and it was remitted to the Circuit Court with directions to remand it to the state court.

There is nothing in the foregoing views which involves the decision of this court in *Barney* v. *Latham*, 103 U. S. 205, which was to the effect that where in a case there was in fact an entirely separate controversy between the plaintiffs and several defendants petitioning for removal, with which controversy another defendant, a citizen of the same State with one of the plaintiffs, had no necessary connection, and which controversy could be fully determined as between the parties actually interested in it, without the presence as a party in the cause of such other defendant, not only could there be a removal, but the removal carried with it into the Federal Court all the controversies in the suit between all parties to it.

It is suggested that it is a hardship to the plaintiff to reverse his decrees for want of jurisdiction in the Circuit Court after he has prosecuted his suit in that court successfully, on his being taken into that court adversely more than six years ago. The answer is that the jurisdiction of this court in the present case to review the question of the jurisdiction of the Circuit Court could only arise on the hearing of an appeal from a final decree of the latter court, because by § 5 of the act of March 3, 1875, 18 Stat. 472, this court was authorized to review only an order of the Circuit Court remanding a cause, and not one retaining jurisdiction over it. Even that provision was repealed by § 6 of the act of March 3, 1887, 24 Stat. 555; and this court can now review a question as to the jurisdiction of a Circuit Court only in reviewing a final judgment or decree, although by the act of February 25, 1889, 25 Stat. 693, it may do so in a case not involving over $5000.

*It results from the foregoing considerations that both of the decrees of the Circuit Court, as well that against Graves as that against the First National Bank of Chicago, must be reversed, and the case be remanded to the Circuit Court with a direction to remand it to the Circuit Court of Cook*

*County, Illinois, the costs of this court to be paid by the First National Bank of Chicago, the petitioner for removal.*

MR. CHIEF JUSTICE FULLER did not sit in this case or take any part in its decision.