COLBURN et al. v. HILL et al.

(Circuit Court of Appeals, Sixth Circuit.	May 8, 1900.)

No. 756.

1. REMOVAL OF CAUSES—SEPARABLE CONTROVERSY—CREDITORS' SUITS.

A creditors' suit, the purpose of which is to obtain the administration of the property of an insolvent corporation, and incidentally to exclude certain of the defendants from participating in the distribution of such property, on the ground of the invalidity of a contract made by the corporation, on which their rights as creditors depend, is indivisible, and no one of such defendants can remove the cause on the ground that there is a separable controversy as to him, although their interests may be several, and their defenses different.

2. SAME—REMAND—EFFECT OF CONSOLIDATION.

The consolidation of a suit, after its removal into a federal court, with another suit between some of the same parties, subsequently commenced in said court, cannot affect the jurisdiction of the court over the cause removed, or its duty, or that of an appellate court, to remand such cause on determining that it was not properly removable.

Appeal from the Circuit Court of the United States for the Western District of Tennessee.

This bill was filed in the chancery court of Shelby county, Tenn. The complainants are all citizens of Massachusetts. The defendants and their citizenship are as follows: (1) The Hill Shoe Company, a corporation of the state of Tennessee; C. W. Edmonds, William R. Randolph, and David T. Porter, citizens of Tennessee. (2) Mary T. Hill, a citizen of the state of New York. (3) F. Brigham & Co. and Potter, White & Bailey, partnerships, whose members are citizens of Massachusetts; the Davis Shoe Company, a corporation of Massachusetts. Upon the petition of Mrs. Mary T. Hill, one of the defendants, the suit was removed to the circuit court of the United States, upon the sole ground that there was a separable controversy between the complainants and the petitioner, a citizen of the state of New York, which could be fully determined, as between the said Mary T. Hill and the said complainants, without the presence of any of the other parties to the said suit. Is the suit removable upon the petition of Mrs. Hill? Does the fact that some of the defendants joined with her were citizens of Massachusetts, and that others are citizens of Tennessee, prevent a removal by her? The answer to this must depend upon the existence of a separable controversy, within the meaning of the removal statute. A motion to remand to the state court was denied; the learned trial judge being of opinion that the suit embraced a number of distinct controversies, and that, so far as such controversies affected Mrs. Hill, they could be tried out without the presence of any other defendant whose citizenship was identical with that of complainants. The complainants are creditors of the Hill Shoe Company, and sue in behalf of themselves and all other creditors. That company is a Tennessee corporation, and was organized in October, 1889, for the purpose of taking over the assets and business of a mercantile firm known as Hill & Sons. In May, 1891, it made a deed of general assignment to one A. G. Mitchell. Mitchell partially administered the trust and died. The defendant C. W. Edmonds took possession of the remaining assets, claiming to have been appointed trustee under a proceeding in a state chancery court. The validity of this appointment is denied. Mitchell's accounts had not been settled, and complainants averred that he was heavily indebted to the trust, and had been guilty of misappropriating the assets by the payment of invalid obligations, known to be such by him. One object is to protect the trust assets by restraining Edmonds from acting as trustee, and to have them placed in the hands of a receiver for the purpose of administering the trust under the orders of a court of equity. The sureties upon the bond of Mitchell, and also his executor, were made defendants, and an account of his administration sought. Edmonds was also made a defendant,

and an injunction restraining him from acting as trustee was prayed. In the interest of the proper creditors of the corporation, the bill is framed, also, for the purpose of excluding certain persons, claiming to be creditors, and to be secured under the deed of assignment, and also by liens upon property of the corporation senior to the assignment, from participating in future dividends under the assignment, to cancel any liens or mortgages purporting to secure them, and to compel such fictitious creditors to refund dividends paid on their claims by Mitchell, the trustee.

The persons claiming to be creditors, whose claims are challenged, and against whom relief is sought, are the defendants Mrs. Mary T. Hill, a citizen of New York; the Davis Shoe Company, a corporation of Massachusetts; F. Brigham & Co., and Potter, White & Bailey, two mercantile firms, whose members are citizens of Massachusetts. The averments of the bill affecting these creditors who are made defendants, and upon which relief against them is sought, are complex, lengthy, and not altogether clear or consistent. That we may see whether the relief sought against Mrs. Mary T. Hill involves a distinct and separable controversy, which can be wholly disposed of without the presence of any of the other persons made defendants with her, it has been necessary to analyze the bill. Stated in narrative form, and as briefly as possible, its more important averments are substantially as follows: I. M. Hill, the deceased husband of Mrs. Mary T. Hill, was for many years a shoe merchant in Memphis, Tenn., and was a member of several firms who succeeded each other in the same business. At the time of his death he was the chief member of the firm of I. M. Hill & Sons; his partners being two of his sons, Louis P. and William V. Hill, neither of whom had any capital. His death occurred some time in 1888. By his will he devised his entire estate, real and personal, to his widow, Mrs. Mary T. Hill, and made her sole executrix. His estate consisted of his interest in the business of I. M. Hill & Sons, and certain real estate, his individual property. After his death, and before the organization of the Hill Shoe Company, the business of I. M. Hill & Sons was carried on by the surviving partners, L. P. and Wm. V. Hill, under the firm name of Hill & Sons. Whether Hill & Sons constituted a new firm, or merely continued the business for winding-up purposes, does not clearly appear from the bill. It is perhaps inferable that under some arrangement with Mrs. Hill they took the assets and assumed the liabilities of I. M. Hill & Sons. That I. M. Hill & Sons had assets, consisting of the stock of merchandise and book accounts, aggregating several hundred thousand dollars, is averred. But it is also distinctly charged that the liabilities of the firm exceeded the values of the assets very greatly. It is also charged that the estate of I. M. Hill was hopelessly insolvent, by reason of the large indebtedness of the firm of I. M. Hill & Sons and of former firms of which he was a member. In this state of affairs, the bill, in substance, charges that for the purpose of postponing the payment of the liabilities of I. M. Hill, and of securing to Mrs. Hill a settlement in money and property out of his estate, which in ordinary course of administration she could not secure, and for the purpose of carrying on the business with the assets of the former firm, the scheme of organizing a corporation was fallen upon. Accordingly the Hill Shoe Company was organized; the incorporators being Mrs. Mary T. Hill, three of her sons (two of them being the surviving partners of I. M. Hill & Sons), and A. G. Mitchell. It is charged that neither her sons nor Mitchell had any capital, and that Mrs. Hill contributed nothing except certain real estate devised to her under the will of I. M. Hill, and about which more will appear. These corporators constituted the board of directors, who entered into the engagements and obligations now to be stated. To this corporation, by the consent of Mrs. Hill and the surviving partners of I. M. Hill & Sons, were transferred the assets, including book accounts, of I. M. Hill & Sons and of Hill & Sons, if the latter constituted a new firm. To that corporation Mrs. Hill conveyed the several parcels of real estate which passed to her under the will of I. M. Hill, by a deed which limited the effect of the grant to such title as she had received under the will. It is then, in substance, charged that, in consideration for these assets and real property, the Hill Shoe Company agreed to do certain things, namely: First, to issue paid-up capital stock to Mrs. Hill in an amount not definitely stated, but said to be enough to make her a dominating stockholder;

second, to issue to the three sons of I. M. Hill paid-up shares of stock in an amount not stated; third, to assume and pay all the indebtedness of the old firm of I. M. Hill & Sons; fourth, to assume and pay all the indebtedness of I. M. Hill, either individually, or as a member of any firm with which he had been connected; fifth, to indemnify Mrs. Hill, as executrix, against any liability as such; sixth, to pay to Mrs. Hill monthly, during her life, the sum of $400, in lieu of any dividends upon her stock in the Hill Shoe Company; seventh, to permit Mrs. Hill to use and occupy the Hill residence, being a part of the realty conveyed to it under the plan and arrangement above set out, during her life, free from rent, taxes, and expenses of repair.

The complainants file with their bill an instrument, styled by the pleading a "mortgage," which was executed by the Hill Shoe Company to Mrs. Hill. A part of the relief sought by the bill is the cancellation of this instrument. It bears even date with her deed to the corporation, and recites that deed, and describes the property conveyed thereby. It is there stated that for the purpose of carrying out the contracts and agreements between Hill & Sons and the Hill Shoe Company, which are referred to as having been made December 24, 1889, the Hill Shoe Company "does hereby promise and agree to and with the said Mrs. Mary T. Hill, and bind itself, as follows: (1) That it will at the end of each month, beginning with the present month of January, 1890, pay to the said Mary T. Hill, for and during her natural life, the sum of $400 in money for each month, which sum shall be taken and accepted by her in lieu of dividends on any stock she now holds or may hold in the Hill Shoe Company during such time. (2) The Hill Shoe Company hereby grants, bargains, sells, and conveys unto the said Mary T. Hill the right to occupy and use, and have the benefit of, the property at the northeast corner of Court and Third streets, Memphis, Tenn., fronting 74¼ feet on the east side of Third street, being one of the pieces of property heretofore conveyed by the said Mary T. Hill to the Hill Shoe Company, as hereinbefore stated, and the buildings and improvements thereon, and rights and appurtenances thereto belonging, for and during her natural life, as and for her homestead, free and discharged from any rent whatever, and free and discharged from all taxes and other charges and expenses, which taxes and other charges and expenses the Hill Shoe Company hereby binds and obligates itself to pay and discharge during the said time. (3) The Hill Shoe Company hereby assumes and agrees and obligates itself to pay any and all debts and liabilities whatsoever owing by the said Ira M. Hill, deceased, at the time of his death, or owing by the said Mary T. Hill, as executrix of his last will and testament, not already paid or in some way discharged, and to indemnify and save harmless the said Mrs. Mary T. Hill and the estate of the said Ira M. Hill, deceased, from any and against all such liabilities and debts. And for the purpose of securing the performance of each and all the stipulations and provisions of this contract, to wit, the payment of the $400.00 per month stipulated in the first paragraph above, and the occupation and use of the property at the northeast corner of Court and Third streets, and the payment of the taxes and other charges and other expenses provided in the second paragraph, and the payment of all the debts and liabilities owing by the said Ira M. Hill at the time of his death, or the said Mary T. Hill, as his executrix, not already paid or in some way discharged, the Hill Shoe Company hereby gives, grants, conveys, and agrees to a lien and charge upon the said property so situated at the northeast corner of Court and Third streets, hereinbefore mentioned, and more particularly described in the deed made by the said Mary T. Hill to the Hill Shoe Company, before referred to, and that such property shall be charged and bound for the performance in every particular of this contract, and that should the Hill Shoe Company at any time fail to perform and fulfill, according to its true intent and meaning, each and all the stipulations thereof, then the said Mrs. Mary T. Hill may enforce such lien against the said property, and have the same sold, and the proceeds applied first to pay her any sums due or that may become due by reason of the breach by the Hill Shoe Company of the contract aforesaid, or any of its provisions." It is then charged that the said Hill Shoe Company proceeded to apply its assets in paying off large parts of the indebtedness of I. M. Hill & Sons, and that it gave its promissory notes in settlement of the claims of other such creditors. The two Massachusetts

firms and the Massachusetts corporation joined with Mrs. Hill as defendants are averred to have been large creditors of I. M. Hill & Sons, who obtained the notes of the Hill Shoe Company for their several claims, and who, it is averred, "acted for the Hill Shoe Company in securing other creditors of I. M. Hill and of I. M. Hill & Sons to take the obligations of said company for their debts."

Complainants attack the contract by which the Hill Shoe Company assumed the debts of I. M. Hill and of I. M. Hill & Sons upon two or more grounds. They aver that the agreement was in excess of the power of a Tennessee corporation, and therefore void. They aver that the contract was based upon no valid consideration, and is therefore unenforceable. They also charge that the agreement by which it issued its paid-up stock to Mrs. Hill and her sons, and obligated itself to pay her a fixed sum during life upon her stock, was in excess of the power of the corporation; that the corporation exceeded its power, in acquiring from her real estate not necessary for its business. Finally, they charge that the whole scheme by which the Hill Shoe Company entered into the obligations above set out was intended to hinder, delay, cheat, and defraud the creditors of the Hill Shoe Company, both existing and future. It is charged that the obligations to the creditors of I. M. Hill & Sons and to Mrs. Hill were illegal, void, and nonenforceable, as against the creditors of that corporation especially. The trustee, A. G. Mitchell, is charged with having been an active party in the execution of the original contract by which the Hill Shoe Company assumed obligations rendering it insolvent before it had commenced business, and with having knowledge of the void and fraudulent character and purpose of the whole scheme. It is charged that, as trustee, he had paid to such creditors of I. M. Hill & Sons and to Mrs. Hill large sums out of the trust estate in his hands. The prayer of the bill, particularly based upon this portion of the bill, is that the Massachusetts defendants be excluded from participation in further dividends; that the Massachusetts defendants be required to account for all they have received, either "as dividends or otherwise," and refund same; that the estate of A. G. Mitchell and the sureties on his bond be held to account for all moneys and property which came to his hands, and for all moneys misappropriated by payments on obligations of I. M. Hill or I. M. Hill & Sons, and for all payments to Mrs. Mary T. Hill on account of the void covenants in her behalf; that Mrs. Hill be compelled to account for and refund all sums paid to her under the covenants and obligations for her benefit, and to account for the reasonable value of the use and occupation of the Hill residence; that the appointment of the defendant Edmonds be held void and of no effect, and that he be restrained from further acting as trustee; that all the assets of the Hill Shoe Company be placed in the hands of a receiver, and administered under the orders of the court.

T. B. Edgington and George Gillham, for appellants.
Wm. M. Randolph and Luke E. Wright, for appellees.

Before LURTON and DAY, Circuit Judges, and CLARK, District Judge.

LURTON, Circuit Judge, after making the foregoing statement of the case, delivered the opinion of the court.

The bill, as shown by the foregoing statement, is a general creditors' bill; having for its principal purpose the administration, under the orders and decrees of a court of equity, of the assets of an insolvent corporation, theretofore conveyed under a deed of general assignment. To this end the bill seeks to gather in the assets of the corporation, and to distribute their proceeds in payment of its valid and bona fide debts. The validity of certain contracts and agreements of the corporation is denied, and the bill seeks to exclude all claiming to be creditors by virtue of said contracts and agreements

from participation in the benefits of the deed of assignment, and to recover, for the benefit of bona fide creditors, all sums which have been diverted from the assets of the corporation by improper payments made to such claimants by the original trustee under the company's deed of assignment. Incidental to the elimination of all such illegal liabilities, and the restoration of moneys paid to them improperly, the bill seeks to annul the lien or charge fastened on certain of the property of the company for the purpose of securing the performance of the alleged illegal covenants and agreements. The alleged fictitious creditors against whom relief is sought are the defendants Mrs. Mary T. Hill and certain Massachusetts creditors of the firm of I. M. Hill & Sons, whose debts, it is alleged, were illegally assumed by the Hill Shoe Company. The agreement under which the debts due to the Massachusetts creditors by I. M. Hill & Sons were assumed by the Hill Shoe Company, and the agreement under which Mrs. Hill occupies a part of the corporate property and receives a stipulated monthly payment, have a common origin. They constitute in large part the consideration for the property conveyed to the corporation by the surviving members of the firm of I. M. Hill & Sons and Mrs. Hill. If that contract was neither fraudulent in fact nor illegal, as in excess of the company's power, the decree will be one way; if not, a different result will follow.

The bill attacks the contract as an entirety,—both as a fraud, in law and fact, against future creditors, and also as void, being in excess of the power of a Tennessee mercantile corporation. The beneficiaries under the contract assailed are the creditors of I. M. Hill & Sons, of Hill & Sons, if that was a distinct firm, and Mrs. I. M. Hill. Their interests may be different, and their defenses to the bill may be different, but the subject-matter of the suit is the contract by which the Hill Shoe Company acquired its assets, and in exchange for which it gave its capital stock, and assumed the obligations alleged to be illegal and void. The bill may be demurrable in whole or in part. It may be inconsistent. It may be a good bill as to part of the relief sought against Mrs. Hill, and bad as to the rest. The complainants may not have such a standing as will enable them to sustain such a bill. They may be estopped in whole or in part. We express no opinion as to the merits of the bill. To do so would be to assume and exercise jurisdiction. One thing is clear: There is no separable controversy between Mrs. Hill and the complainants, which can be wholly disposed of without the presence of the other defendants. She is one of others who are interested in maintaining the validity of the agreement under which the corporation acquired its property, and for which it entered into the covenants and obligations now assailed. The so-called mortgage to her is a mere security. If the engagement thereby secured is void for any reason, the security is at an end. But the so-called mortgage is not alone for the security of the obligations personal to her. Its object was to secure the performance of all the obligations of the corporation which were entered into as the price of the property it received. One of them was that it would assume and pay the debts of I. M. Hill, individual and firm. The creditors of I. M. Hill and of I. M. Hill &

Sons have, therefore, an interest in the mortgage. The Massachusetts creditors joined as defendants with Mrs. Hill have therefore an interest, not only in maintaining the general validity of the agreement under which their debts against I. M. Hill & Sons were assumed by the Hill Shoe Company, but in maintaining the validity of the mortgage to Mrs. Hill. The defense of the Massachusetts creditors may be different from that of Mrs. Hill, but it has been repeatedly held that separate defenses do not create separate controversies, within the meaning of the removal act. Railroad Co. v. Ide, 114 U. S. 52, 5 Sup. Ct. 735, 29 L. Ed. 63; Pirie v. Tvedt, 115 U. S. 41, 5 Sup. Ct. 1034, 1161, 29 L. Ed. 331; Starin v. New York, 115 U. S. 248, 6 Sup. Ct. 28, 29 L. Ed. 388; Deposit Co. v. Huntington, 117 U. S. 280, 6 Sup. Ct. 733, 29 L. Ed. 898. The relief sought by the bill against both the Massachusetts creditors made defendants and against Mrs. Hill is incidental to the main purpose of the bill, which is to gather in all the assets, disincumber all of the property, eliminate all void or fraudulent obligations, and to distribute all of the proceeds of the corporate property between all its just and bona fide creditors. These results cannot be accomplished unless all of the defendants are parties. There is, therefore, but a single cause of action, and that is the equitable distribution of the assets of an insolvent corporation between its legal and bona fide creditors. This cause of action is not divisible. The suit is therefore not removable, for the citizenship of some of the necessary defendants is identical with that of the complainants.

In Ayres v. Wiswall, 112 U. S. 187, 192, 5 Sup. Ct. 93, 28 L. Ed. 695, the supreme court said:

"The rule is now well established that this clause in the section refers only to suits where there exists 'a separate and distinct cause of action, on which a separate and distinct suit might have been brought, and complete relief afforded as to such cause of action, with all the parties on one side of that controversy citizens of different states from those on the other. To say the least, the case must be one capable of separation into parts, so that in one of the parts a controversy will be presented with citizens of one or more states on one side, and citizens of other states on the other, which can be fully determined without the presence of the other parties to the suit as it had been begun. Fraser v. Jennison, 106 U. S. 191, 194, 1 Sup. Ct. 171, 27 L. Ed. 131. As has already been seen, this is not such a case. There is here but one cause of action. The fact that separate answers were filed, which raised separate issues in defending against the one cause of action, does not create separate controversies, within the meaning of that term as used in the statute. They simply present different questions to be settled in determining the rights of the parties in respect to the one cause of action for which the suit was brought. Hyde v. Ruble, 104 U. S. 407, 26 L. Ed. 823; Winchester v. Loud, 108 U. S. 130, 2 Sup. Ct. 311, 27 L. Ed. 677; Shainwald v. Lewis, 108 U. S. 158, 2 Sup. Ct. 385, 27 L. Ed. 691."

The case is, in principle, governed by Shainwald v. Lewis, 108 U. S. 158, 161, 2 Sup. Ct. 385, 27 L. Ed. 691; Deposit Co. v. Huntington, 117 U. S. 280, 6 Sup. Ct. 733, 29 L. Ed. 898; Graves v. Corbin, 132 U. S. 571, 10 Sup. Ct. 196, 33 L. Ed. 462; and Torrence v. Shedd, 144 U. S. 527, 12 Sup. Ct. 726, 36 L. Ed. 528.

In Shainwald v. Lewis, cited above, the suit was brought for the dissolution and settlement of an alleged partnership. The court said there was no separable or removable controversy. "The main dis-

pute," said the court, "is about the existence of the partnership. All the other questions in the case are dependent on that. If the partnership is established, the rights of the defendants are to be settled in one way; if not, in another. There is no controversy in the case which now can be separated from that about the partnership, and fully determined by itself."

In Deposit Co. v. Huntington, cited above, the suit was a creditors' bill to subject incumbered property to the payment of the creditors' judgment, by sale and distribution of the proceeds among lienholders according to their priority. One lienholder sought to remove the suit, as to him, to a United States court, upon the ground that there was as to him a wholly separable controversy. The court said:

"There is but a single cause of action, and that is the equitable execution of a judgment against the property of the judgment debtor. This cause of action is not divisible. Each of the defendants may have a separate defense to the action, but we have held many times that separate defenses do not create separate controversies, within the meaning of the removal act."

In Graves v. Corbin, already cited, the suit was a bill in equity filed in a state court by a creditor of a partnership to reach its entire property. Certain judgments confessed by the firm, on which levies had been made, were attacked for fraud. One of the judgment creditors removed the cause to the circuit court upon the ground that as to him there was a separable controversy. After a final decree for the plaintiff, the supreme court, on an appeal therefrom, held that the case was not removable. That court, among other things, said:

"The case as made by the bill, and as it stood at the time of the petition for removal, is the test of the right of removal. The bill was filed to reach the entire property of the partnership. In order to do that, it was necessary to sweep away, not some, but all, of the confessed judgments, and all of the rights obtained by executions and liens thereunder, and to restore to the assets and moneys of the partnership in the hands of the court the assets and moneys which had been diverted therefrom by the members of the partnership, with the corporation of the various defendants."

The removing defendant was a citizen of a state different from that of the complainant, but the citizenship of other of the judgment creditors joined as defendants with the removing defendant was identical with that of complainant. The court held that under the averments of the bill there was but a single controversy as to all the defendants, and that the relief sought could not be obtained unless all who were made defendants were parties.

It is to be deplored that after years of litigation it should now become the duty of this court to reverse the decree, and direct that the suit be remanded to the state court from which it was improperly removed. We cannot escape the duty imposed by the fifth section of the act of 1875, which makes it the duty of the circuit court, when it shall appear "at any time after such suit has been brought or removed thereto, that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said circuit court or that the parties to said suit have been improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable or removable under this

act, the said circuit court shall proceed no further therein, but shall dismiss the suit or remand it to the court from which it was removed, as justice may require, and shall make such order as to costs as shall be just." This act has been repeatedly enforced by the supreme court, even to the extent of taking notice of the want of jurisdiction in the circuit court, although the point was not formally raised in either court. Graves v. Corbin, 132 U. S. 571, 590, 10 Sup. Ct. 196, 33 L. Ed. 462; Turner v. Trust Co., 106 U. S. 552, 555, 1 Sup. Ct. 519, 27 L. Ed. 273; King Bridge Co. v. Otoe Co., 120 U. S. 225, 226, 7 Sup. Ct. 552, 30 L. Ed. 623; Stevens v. Nichols, 130 U. S. 230, 9 Sup. Ct. 518, 32 L. Ed. 914.

The subsequent consolidation of the removal suit with a suit in which Mrs. Hill was sole complainant, and C. W. Edmonds, as trustee, the only defendant, is of no serious consequence. The jurisdiction of the court in respect to the issues made by the bill of Colburn, Fuller, and others, and over the parties thereto, was not widened by the consolidation. Mrs. Hill's bill was for the purpose of collecting arrearages due her under the agreement, and secured by the mortgage assailed by the bill to which she was a defendant. Subsequently she filed an answer and cross bill, and under the latter sought the same relief prayed under her original bill. None of the creditors interested in the lien or charge created by the so-called mortgage to Mrs. Hill were parties to her bill. If, as we have elsewhere said, the creditors of I. M. Hill, individual and firm, were also interested in the security provided by the so-called mortgage to Mrs. Hill, she could not appropriate to her exclusive personal benefit the advantages of that security.

The decrees appealed from are entitled under the style of the two consolidated cases and that of Mrs. Hill's cross bill. The decree allowing the appeal is entitled in the same way, and allows an appeal from specific decrees. The decrees appealed from must be reversed. The circuit court was without jurisdiction to render them. The suit of Colburn, Fuller & Co. and others must be remanded to the state court from which it was removed. This will leave the bill of Mrs. Hill against C. W. Edmonds pending and undisposed of, except in so far as distinct decrees have been entered therein, unaffected by the decrees here reversed. Mrs. Hill will pay all the costs of this court and of the circuit court incurred since date of removal.