## LITTLE & Others *v.* GILES & Another.

### APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF NEBRASKA.

Submitted October 19, 1886.—Decided November 1, 1886.

A suit in a State court against several defendants, some of whom are citizens of the same State with the plaintiff, charging all as joint contractors or joint trespassers, cannot be removed into a Federal court by defendants who are citizens of another State, although they allege in their petition for removal that they are not jointly interested or liable with the other defendants, and that their controversy with the plaintiff is a separate one.

When it appears that the interest of a nominal party to a suit is simulated and collusive, and created for the purpose of giving jurisdiction to a court of the United States, the court should dismiss the suit under the provisions of § 5, Act of March 3, 1875, 18 Stat. 472. *Farmington* v. *Pillsbury*, 114 U. S. 138, affirmed.

After removal of a cause in equity from a State court to a court of the United States, a motion was made under § 5, Act of March 3, 1875, to remand it, on the ground that the title of one of the parties had been collusively acquired for the purpose of removal from the State court. A suit at law involving the same subject-matter was then pending in the Federal court. The same issue of collusion had been made in that cause by a plea in abatement, and the parties stipulated that the issue on the plea in abatement should be tried and that the decision thereon should be taken and entered of record as the decision in the action at law, and also of the issues in the suit in equity as far as they were the same. The trial of the issues on the plea resulted in a finding that the plea had not been sustained, and this, together with all the evidence, being incorporated into the equity suit, the motion to remand the latter was denied : *Held,* That there was nothing in the stipulation to deprive this court of the power of reviewing the action of the court below in denying the motion.

The case is stated in the opinion of the court.

*Mr. J. M. Marquett, Mr. N. S. Harwood, Mr. John H. Ames,* and *Mr. Walter J. Lamb,* for appellants.

*Mr. L. C. Burr* and *Mr. J. M. Woolworth,* for appellee Giles.

MR. JUSTICE BRADLEY delivered the opinion of the court.

The original bill in this case was filed in January, 1882, in the District Court of Lancaster County, in the State of Nebraska, to quiet the title of the complainants, some seventy in number, to certain lots of land in and about the town of Lincoln in that State, severally owned by them (as they allege), and derived under conveyances in fee from one Edith J. Dawson. The bill alleges that Jacob Dawson died seized of the lands in 1869, and by his will, dated June 15 of that year, gave to his wife, the said Edith, all his real and personal estate, to be and remain hers, with full power, right, and authority to dispose of the same as to her should seem meet and proper, so long as she should remain his widow, upon the express condition that if she should marry again then that all the estate, or whatever might remain, should go to the testator's surviving children, share and share alike; and appointed his wife executrix; that she duly proved the will, and afterwards, in order to raise money to pay the debts of her deceased husband, and advance her children, made the conveyances referred to, pretending to be, and the defendants represented that she was, authorized by the power given her in the will to convey the property in fee. The bill states these conveyances, and alleges that the complainants, or their grantors, had severally erected expensive buildings and made valuable improvements on the lands. The bill further states that the said Edith afterwards, on the 15th of November, 1879, was reputed to have intermarried with one Pickering, and that, upon this marriage, the children and heirs of the said Jacob Dawson, namely, William R. Dawson, Albert L. Dawson, and others named in the bill, claimed to be seized in fee under the said will, and fraudulently conspired with one Highland H. Wheeler and one Lionel C. Burr, attorneys, to cloud and encumber the titles of the com-

plainants by various suits at law, and to extort money from them; and that for this purpose the said heirs, without any consideration, but for the pretended consideration of $75,000, executed and delivered to said Wheeler and Burr a pretended deed or deeds for said lands, in consideration whereof it was agreed that the latter should pay and deliver to said heirs one-fourth part of whatever they could extort from the complainants, and retain the balance for themselves; and that further to carry out this fraudulent scheme, Wheeler and Burr, on the 27th of April, 1880, for the purpose of prosecuting complainants in the United States courts, and for no other consideration whatever, executed a pretended deed for said lands to one Ezekiel Giles, father-in-law of said Burr, a man of no property or means, who resided in Iowa; and that they have already commenced several vexatious suits in ejectment in said courts against the complainants, and threaten to commence others. The bill makes Giles, Wheeler, and Burr, and the Dawson heirs defendants, and prays against all of them an injunction, a decree to quiet title, and to cancel the fraudulent conveyances made by Dawson's heirs to Wheeler and Burr, and by Wheeler and Burr to Giles, to establish the complainants' title, and for further relief.

Wheeler and Burr and three of the heirs of Dawson, namely, Albert L. Dawson, M. S. Dawson, and Melita C. D. Tillman, filed a disclaimer of any right, title, or interest in the property; and affidavits were filed by thirty one of the co-complainants, denying that they had authorized their names to be used in the bill, and repudiating all connection with it.

Giles then, on the 28th of February, 1882, presented a petition to remove the cause, as against him, to the Circuit Court of the United States for the District of Nebraska, alleging that he was and is a citizen of Iowa, and that the complainants (those of them who had not repudiated the proceedings) were citizens of Nebraska and other States; that there were as many different controversies as there were complainants, each claiming a separate parcel of the land; and that the several controversies were wholly between each individual plaintiff and himself, and were capable of being fully determined between

them without the others being parties; that the several matters in dispute exceed the value of $500, &c. An order to remove the cause was made accordingly.

On the 1st of March, 1882, a motion was made by the complainants in the Circuit Court to remand the cause, on the ground, amongst other things, that it appeared by the pleadings that Giles is not the real party in interest, but that Wheeler and Burr, and the heirs of Jacob Dawson, are the really interested parties, and that the action is brought in this court (the Circuit Court) for their benefit; that all these parties are residents of Nebraska, except Giles, who is a mere nominal defendant. The motion to remand was not granted, although no action of the court on the subject at this time appears in the record; but it does appear afterwards, as will be shown hereafter, that the motion to remand was refused.

On the 5th of April, 1882, Giles filed his answer and a crossbill. The answer denies the charge of fraud, but admits that the only consideration of the deed from Dawson's heirs to Wheeler and Burr was $200, and an agreement to pay the heirs one third of the proceeds which Wheeler and Burr might recover; it denies that the deed to Giles was made for the purpose of suing in the courts of the United States. It states the marriage of the widow, Edith, and insists that her deeds conveyed only an estate during her widowhood; and that the title derived by Giles from the heirs of Jacob Dawson is valid. It sets out the proceedings in various suits brought against some of the complainants, particularly one in which the judgment was brought to this court, by which the will of · Dawson was construed in favor of Giles and against the title of complainants. *Giles* v. *Little*, 104 U. S. 291.

The cross-bill is filed against all the complainants who did not repudiate the suit. It describes the different tracts held by the several complainants, alleges that they took with full knowledge of the will; that they have received large amounts of rents and profits; that their pretensions are a cloud on Giles's title, and prays for a construction of the will, a decree to quiet title, an account of rents and profits, an injunction, a receiver, &c. The complainants answered the cross-bill, amongst other

things denying that Giles had any real interest, and again raising the question of jurisdiction. It is unnecessary to notice the other pleadings in the cause. The parties went to proofs, and, on the final hearing, the original bill was dismissed in June, 1883, and an account of the improvements erected by the complainants, and of the rents and profits received by them, was ordered to be taken under the cross-bill, and in September, 1884, a decree was rendered in favor of Giles, directing a surrender of the property held by the complainants respectively, on payment of the difference, in each case, between the value of the improvements erected and the rents and profits received. An appeal was taken from each of these decrees.

The first question to be considered is the jurisdiction of the Circuit Court to hear and determine the case. The complainants contested that jurisdiction from the time of the filing of the petition of removal, and a great deal of evidence was taken in reference to the charge that the deed to Giles was collusively made for the purpose of making a case for the Federal courts.

But before examining that matter, there is another aspect of the question which presents itself on the face of the pleadings as they stood when the petition for removal was filed. The bill charged the defendants as co-conspirators in a scheme to raise a cloud on the title of the complainants, and to defraud them of their property. According to the allegations of the bill, the deed to Giles was a link in the chain of fraudulent acts charged. We have repeatedly held that a suit brought against several defendants, some of whom are citizens of the same State with the plaintiff, charging them all as joint contractors or joint trespassers, cannot be removed into the United States court by those who are citizens of another State, although they allege in their petition for removal that they are not jointly interested or liable with the other defendants, and that their controversy with the plaintiff is a separate one. We think that the present case is one of that kind. The bill, as we have said, charges the defendants jointly. Giles could not, by merely making contrary averments in his petition for re-

moval, and setting up a case inconsistent with the allegations of the bill, segregate himself from the other defendants, and thus entitle himself to remove the case into the United States court. This matter has been fully considered in the following cases : *Louisville & Nashville Railroad Co.* v. *Ide,* 114 U. S. 52; *Farmington* v. *Pillsbury,* 114 U. S. 138; *Pirie* v. *Tvedt,* 115 U. S. 41; *Crump* v. *Thurber,* 115 U. S. 56; *Starin* v. *New York,* 115 U. S. 248; *Sloan* v. *Anderson,* 117 U. S. 278; *Insurance Co.* v. *Huntington,* 117 U. S. 280; *Core* v. *Vinal,* 117 U. S. 347; *Mining Co.* v. *Canal Co.,* 118 U. S. 264.

In *Louisville & Nashville Railroad Co.* v. *Ide,* the suit was originally brought by Ide in the Supreme Court of New York against several railroad companies forming a continuous line, including the plaintiff in error, to recover damages for the loss of cotton shipped at one end of the line and destined to the other. The Louisville and Nashville Company separated in pleading, and denied that the loss had occurred on its road, and removed the case, as to itself, to the Circuit Court of the United States, alleging in the petition for removal that the controversy with it was a separate one. The Circuit Court remanded the case, and on a writ of error we affirmed the order to remand. In delivering the opinion of the court, the Chief Justice said : " The claim of right to a removal is based entirely on the fact that the Louisville and Nashville Company, the petitioning defendant, has presented a separate defence to the joint action by filing a separate answer tendering separate issues for trial. This, it has been frequently decided, is not enough to introduce a separate controversy into the suit, within the meaning of the statute. *Hyde* v. *Ruble,* 104 U. S. 407; *Ayres* v. *Wiswall,* 112 U. S. 187, 192. Separate answers by the several defendants sued on joint causes of action may present different questions for determination, but they do not necessarily divide the suit into separate controversies. A defendant has no right to say that an action shall be several which a plaintiff elects to make joint. *Smith* v. *Rines,* 2 Sumner, 348. A separate defence may defeat a joint recovery, but it cannot deprive a plaintiff of his right to prosecute his own suit to final determination in his own way. The cause of action is the subject-

matter of the controversy, and that is for all the purposes of the suit whatever the plaintiff declares it to be in his pleadings."

In *Pirie* v. *Tvedt*, 115 U. S. 41, the case was one of malicious prosecution, and, of course, by the common law, the defendants could be sued jointly or severally. But the plaintiff had elected to sue them jointly, as being jointly concerned in. the prosecution complained of. The Chief Justice delivered the opinion of the court, and, after citing and reaffirming the case of *The Louisville & Nashville Railroad Co.* v. *Ide*, he said: "The cause of action is several, as well as joint, and the plaintiffs might have sued each defendant separately, or all jointly. It was for the plaintiffs to elect which course to pursue. They did elect to proceed against all jointly, and to this the defendants are not permitted to object. The fact that a judgment in the action may be rendered against a part of the defendants only, does not divide a joint action in tort into separate parts any more than it does a joint action on contract."

The present case is clearly within the rule established by these and the other cases referred to.

But we are also satisfied that the other ground is well taken —that the deed to Giles was collusively made for the mere purpose of giving jurisdiction to the courts of the United States; and that for this reason the case should have been remanded to the State court. We have examined the evidence on this subject with some care, and have come to that conclusion. Whether, under the former practice of the court, the deed to Giles, being binding between him and his grantors, Wheeler and Burr, would have been deemed sufficient to give jurisdiction to the Circuit Court, although made for the purpose of such jurisdiction, it is not necessary to inquire. We are satisfied that, by the Act of 1875, Congress intended to introduce a rule that shall put a stop to all collusive shifts and contrivances for giving such jurisdiction. The language of the fifth section of that act is as follows: "That if, in any suit commenced in a Circuit Court, or removed from a State court to a Circuit Court of the United States, it shall appear to the satisfaction of the said Circuit Court, at any time after such suit

has been brought or removed thereto, that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said Circuit Court, or that the parties to said suit have been improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable or removable under this act, the said Circuit Court shall proceed no further therein, but shall dismiss the suit or remand it to the court from which it was removed, as justice may require." 18 Stat. 472. Here the words "really" and "substantially," and the expression "improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable or removable," are very suggestive, and show that, by giving the Circuit Courts authority to dismiss or remand the cause at once, if these things are made to appear, it was the intent of Congress to prevent and put an end to all collusive arrangements made to give jurisdiction, where the parties really interested are citizens of the same State. Of course, where the interest of the nominal party is real, the fact that others are interested who are not necessary parties, and are not made parties, will not affect the jurisdiction of the Circuit Court; but when it is simulated and collusive, and created for the very purpose of giving jurisdiction, the courts should not hesitate to apply the wholesome provisions of the law.

In *Farmington* v. *Pillsbury*, 114 U. S. 138, where certain bonds of a municipal corporation were declared void by a State court, as issued under an unconstitutional act, and thereupon the holders of some of the coupons cut them off and transferred them to a citizen of another State, at much less than their face value, and took his note therefor, with an agreement that he should give them one half of what he might recover, and the transferee then brought suit in the Circuit Court of the United States, we held that this was a collusive transfer, and within the provisions of the fifth section of the Act of 1875. The Chief Justice, in delivering the opinion of the court, after showing that the question of colorable transfers to create a case for the Federal courts was formerly presented for the most part in writs for the recovery of real property, and could only be raised

by plea in abatement; and that if the transfer was shown to be fictitious and colorable such plea would be sustained, added: " Such was the condition of the law when the Act of 1875 was passed, which allowed suits to be brought by the assignees of promissory notes negotiable by the law merchant, as well as of foreign and domestic bills of exchange, if the necessary citizenship of the parties existed. This opened wide the door for frauds upon the jurisdiction of the court by collusive transfers, so as to make colorable parties and create cases cognizable by the courts of the United States. To protect the courts as well as parties against such frauds upon their jurisdiction, it was made the duty of a court, at any time when it satisfactorily appeared that a suit did not ' really and substantially involve a dispute or controversy ' properly within its jurisdiction, or that the parties ' had been improperly or collusively made or joined . . . for the purpose of creating a case cognizable' under that act, ' to proceed no further therein,' but to dismiss the suit, or remand it to the State court from which it had been removed. . . . The old rule established by the decisions, which required all objections to the citizenship of the parties, unless shown on the face of the record, to be taken by plea in abatement before pleading to the merits, was changed, and the courts were given full authority to protect themselves against the false pretences of apparent parties. This is a salutary provision which ought not to be neglected. It was intended to promote the ends of justice, and is equivalent to an express enactment by Congress that the Circuit Courts shall not have jurisdiction of suits which do not really and substantially involve a dispute or controversy of which they have cognizance, nor of suits in which the parties have been improperly or collusively made or joined for the purpose of creating a case cognizable under the act."

An examination of the evidence in the present case shows conclusively, as it seems to us, that it is one of the kind referred to by the Chief Justice.

The widow, Edith J. Dawson, was married to her second husband, Pickering, November 15, 1879. Pickering was sworn as a witness, and says that the marriage was delayed some time

on the suggestion of Mrs. Dawson that she must first sell her property, and give her children a chance to make a contract with Wheeler and Burr. She denies this, it is true ; but the facts seem to corroborate Pickering's story. She certainly did dispose of most of the lands before the marriage at prices based upon the supposition that she could convey a fee ; and, in evident anticipation of the marriage—for it was on the *tapis* for a considerable time—on the 15th of September, 1879, the heirs conveyed their interest in the property to Wheeler and Burr ; and on the 10th of November, only five days before the marriage, Wheeler and Burr executed an agreement with the heirs that whenever they (Wheeler and Burr) should come into possession and be seized in fee simple absolute of the estate, or any part thereof, they would quitclaim to the heirs one undivided third interest, or pay them the value of such third in cash. This agreement was really the whole consideration of the conveyance.

The next thing done was the making of the deed from Wheeler and Burr to Giles, dated April 27, 1880, for the nominal consideration of $75,000, but really for no consideration at all except an agreement between them, of the same date as the deed, by which Wheeler and Burr agreed to prosecute all suits against claimants, at the expense of Giles, for the possession of the premises, and to render or procure all necessary legal assistance for such purpose; and Giles agreed to pay all expenses of such suits; and, in the event of final success of any such suits, to pay Wheeler and Burr the value of one third of the lands recovered, and to assume and discharge all indebtedness arising by reason of the contract of November 10, 1879, made with the Dawson heirs. A little later Giles gave Burr (who was his son-in-law) a full power of attorney to act for him in the matter; to sue, recover possession, sell, lease, mortgage, and otherwise dispose of the lands, and execute deeds, and other instruments to that end, and to manage and control the property. But it nowhere appears that Giles ever advanced any money or did anything in the matter.

Now, who was Giles, who entered into this large speculation in real estate in Lincoln, amounting in value to over

$75,000, and in the hands of adverse claimants, against whom suits would have to be brought to get possession? He was a poor farmer, living in Clay County, Iowa, two hundred and fifty or three hundred miles from Lincoln. He had never seen the property; he did not know its value; he had never been at Lincoln: and when, some time after the deed was made to him, he was told that the property was worth $75,000, he seemed greatly surprised. He further admitted that he had never had the deed in his possession, and had never seen it. The record has a large mass of evidence on the subject, *pro* and *con*, which it is unnecessary to repeat. The contemporary declarations of Burr are equally suggestive. He is proved to have admitted that the deed was made to Giles in order that suit might be brought in the United States Court. In July, 1880, he wrote a long and urgent letter to William R. Dawson, one of the heirs, in which he speaks of the case as his case and theirs, and that, if properly managed, it would make all of them rich. Amongst other things, this is what he says:

"Your letter of late date was received, and I want to reply to some things relating to the suit of the *Dawson Heirs* v. *Bacon et al.* I have but very little doubt in my mind but what I shall within four years from to-day win this suit and get you heirs all this property back again, and thereby not only make myself, but all of you heirs, independently rich. Of course it is a long and tiresome and expensive suit, but I expect and know that, now, while commencing the same. Yet you heirs are all interested with me, and must help me all you can, as the men I must fight are rich and numerous, and will do all they can to delay and hurt my prospects to win the case. Galey is already helping them all he can, by saying that he saw the will about one year after it was put in court; that your father at the time of his death was heavily in debt, to the full extent of his property, viz., $10,000, etc., and that H. S. Jennings drew the will." This evidence might not be admissible against Giles if it did not appear (as it does) that they were all concerned and implicated together in carrying out the general scheme, Burr being the *alter ego* of Giles, and Giles of Burr.

Much more evidence to the same purport is contained in the record; and although counter-evidence was adduced by the defendants, we think that the weight of it all is decidedly to the effect that Giles really had no interest in the matter, and that the deed to him was made for the sole purpose of giving the Circuit Court jurisdiction. Being of this opinion, we think that the court was in error in not remanding the case to the State court.

It is contended by the appellees, however, that the decision of the judge in the case at law of Giles against Owens and al., upon the plea in abatement in that case, in which the issue was whether the deed to Giles was collusively made for the purpose of bringing suit in the United States court, concludes the appellants on that point. A stipulation was entered into between the parties in this case that the issue on said plea in abatement should be tried, and that the decision thereon should be taken and entered of record as the decision upon the pleas filed in four other actions at law against other parties, and also of the issues in this suit as far as they are the same.

All that this stipulation amounts to, so far as it affects this case, is, that the trial and decision in the law case should be regarded as the decision in this. It is the same as if an issue had been directed by the Circuit Court, and a verdict had been rendered. The decision of the judge was adverse to the appellants and in favor of Giles; and, so far as this case is concerned, that decision, by virtue of the stipulation, is to be considered as the decision of the Circuit Court, and nothing more. But all the evidence taken on that trial is incorporated into this case, and is now before us. If we are satisfied that the whole evidence in the case, taken together, including that before the judge, does not support the decision, we are not bound by it. We have already stated our conclusion.

The stipulation above referred to, and the adoption thereby of the judge's decision in the case at law as the decision of the Circuit Court, obviates another objection made by the appellee, to wit, that no decision of the Circuit Court was ever made on the motion to remand the cause.

The decrees of the Circuit Court are

*Reversed and the cause remanded, with directions to remand the same to the District Court of Lancaster County, from which it was removed.*