### ELKINS v. HOWELL et al.

(Circuit Court, N. D. West Virginia. August 22, 1905.)

**1. REMOVAL OF CAUSES—SEPARABLE CONTROVERSY—ALLEGATIONS OF BILL.**

The question whether there is a separable controversy in a suit in equity, within the meaning of the removal statute (Act March 3, 1887, c. 373, 24 Stat. 552, § 2, as corrected by Act Aug. 13, 1888, c. 866, 25 Stat. 433 [U. S. Comp. St. 1901, p. 509]), is to be determined from the allegations of the bill alone, which, for the purpose of a motion to remand, are taken as confessed, and independent of any allegations in the petition for removal or of answers filed after removal.

[Ed. Note.—For cases in point, see vol. 42, Cent. Dig. Removal of Causes, § 115.

Separable controversy, ground for removal of cause to federal court, see notes to Robbins v. Ellenbogen, 18 C. C. A. 86; Mecke v. Valleytown Mineral Co., 35 C. C. A. 155.]

**2. SAME—SUIT FOR SPECIFIC PERFORMANCE.**

In a suit by a purchaser to enforce specific performance of a contract for the sale of lands, against the vendor and grantees to whom he conveyed the land subsequent to the contract with complainant, but before it was recorded, there is a separate controversy with such grantees, involving their right to hold the land as against the complainant, which gives them the right to remove the cause, where they are nonresidents and the requisite amount is involved.

On Motion to Remand to State Court.

C. W. Dailey, for plaintiff.
Talbott & Hoover, for defendants Moore, Keppel & Cobb.
W. T. George, for defendant Howell.

DAYTON, District Judge. Davis Elkins filed his bill in equity in the circuit court of Randolph county, W. Va., against J. E. Howell and W. H. Cobb, residents of the state, and John B. Moore and Henry Keppel, residents of the state of Pennsylvania, in which he alleges that Howell on May 11, 1901, by executory contract, sold to him a certain tract of land and all the coal underlying four other tracts, situate in said county, at a stipulated price per acre; that on November 22, 1902, by executory contract, Howell undertook to sell to defendant Cobb certain lands in said county which embraced the land and coal sold to him (Elkins); that Cobb's contract with Howell was admitted to record in said county on November 24,

1902, while his (Elkins') contract was admitted to record December 1, 1902; that by deed of December 26, 1902, Howell actually conveyed the lands embraced in his contract with Cobb, and which included the tract in fee and the four tracts of coal in controversy, to the two nonresident defendants, Moore and Keppel, which deed has been duly recorded; that on February 6, 1903, by deed, Cobb conveyed to Moore and Keppel all his "right, title, and interest" in and to the land conveyed to them by Howell by the deed aforesaid. The contracts between Howell and Elkins and Howell and Cobb, and the deeds of Howell to Moore and Keppel and Cobb to Moore and Keppel are all exhibited with and made parts of the bill. Full and specific charges are made in this bill of knowledge, prior to purchase, on the part of Cobb, Moore, and Keppel, of plaintiff's prior contract, and it is charged that Cobb represented Moore and Keppel. The prayer of the bill is, first, that the land and coal sold by Howell to plaintiff, Elkins, be ascertained, and that Moore and Keppel be required to convey the same to him; or, second, if this cannot be done, that Howell's contract with Cobb, his deed to Moore and Keppel, and Cobb's deed to Moore and Keppel, be set aside, and Howell be compelled to convey him said land and coal; or, third, if this cannot be done, that he recover from Howell his damages arising from his breach of contract, that the amount thereof be required to be paid by Moore and Keppel, and, upon their failing to pay, the amount thereof be charged against said land in their hands. Upon petition filed at rules, before confession, by the nonresidents, Moore and Keppel, the cause was removed to this court, where it now comes up upon a motion made by plaintiff, Elkins, to remand.

Since the case came here answers have been filed by Howell, admitting his contract with Elkins, but alleging its mutual rescission by them; by Cobb, denying all knowledge on his part of the existence of Elkins' contract, prior to his contract to purchase, which he alleges was taken by him for and on behalf of Moore and Keppel, as their agent, and that the down payment was made by him wholly with their funds; and by Moore and Keppel, setting up that Cobb was their agent, bought the lands for them as such, and denying on his and their part any notice or knowledge of Elkins' prior unrecorded contract.

The decision of this motion turns upon the common, but none the less perplexing, question of what constitutes a "separable" controversy, under the third clause of section 2 of Act Cong. March 3, 1887, c. 373, 24 Stat. 552, as corrected by Act Aug. 13, 1888, c. 866, 25 Stat. 433 [U. S. Comp. St. 1901, p. 509], governing the removal of causes from state to federal courts. Such controversy by the provisions of the act must be one "wholly between citizens of different states," and must be such as "can be fully determined as between them," in which case removal may be had at the instance of "one or more of the defendants actually interested." It seems clear that the question is to be determined independent of any allegation contained in the petition for removal, and also of answers filed in the

cause since removal. In short, the allegations of the bill, under the circumstances of this case, are to be taken substantially as confessed for the purposes of this motion. Little v. Giles, 118 U. S. 596–600, 7 Sup. Ct. 32, 30 L. Ed. 269; Torrence v. Shedd, 144 U. S. 527, 12 Sup. Ct. 726, 36 L. Ed. 528; Wilson v. Oswego Tp., 151 U. S. 56, 14 Sup. Ct. 259, 38 L. Ed. 70; Graves v. Corbin, 132 U. S. 585, 10 Sup. Ct. 196, 33 L. Ed. 462; L. & N. R. Co. v. Wangelin, 132 U. S. 599, 10 Sup. Ct. 203, 33 L. Ed. 473; Crump v. Thurber, 115 U. S. 56, 5 Sup. Ct. 1154, 29 L. Ed. 328.

What is the primary purpose of this bill? All will agree to the answer—to secure on behalf of Elkins the specific performance of his contract with Howell. If specific performance in the proper sense is to be decreed, what would it require to specifically perform? The answer is clear—the conveyance to Elkins of the legal title to the tract of land and four tracts of coal. In whom is such legal title, and from whom, therefore, would its conveyance have to come? From Moore and Keppel. What right could plaintiff enforce against Howell or Cobb, in case he could be decreed a conveyance of the legal title to the land and coal? Certainly none. The relief sought for against them is purely conditional. He will have no controversy whatever with either, if he shows himself entitled to the primary relief against the nonresidents, Moore and Keppel. He prays relief in three alternative forms: First, to compel conveyance from Moore and Keppel; second, if not entitled to this (which may be the case by reason of his failure to record his contract, and of Moore and Keppel's being, through Cobb, their agent—and he charges that Cobb did represent them—innocent purchasers without notice), then he prays that their deed and Cobb's contract with Howell and his deed to them may be set aside, and Howell may be required to convey. This is praying in a circle, and substantially for the same thing as in the first prayer. There would be no necessity for setting aside these instruments, and courts of equity do not set aside deeds, ordinarily, except for fraud or failure of consideration. If plaintiff were entitled to specific conveyance, it would be gross error to set aside Moore and Keppel's deed and make Howell convey; for such action might destroy their right to recover from Howell for the broken covenant of warranty in such deed to them. The only thing the court could do, as we view it, would be, in case plaintiff was entitled to the land, to require Moore and Keppel to convey, and Elkins to pay the purchase money due from him under his contract with Howell to them as the assignees by deed of Howell. In the third alternative, he prays, if it shall turn out that he is not entitled to either of the first two measures of relief, that then he may have his damages against Howell for his breach of contract ascertained and charged against the lands in the hands of Moore and Keppel.

It is impossible for me to conceive how, under any circumstances, the plaintiff could be denied a conveyance of the property from Moore and Keppel, and yet be granted a charge upon it in their hands for his unliquidated claim for damages against Howell. It is clear that, in case the defendants Moore and Keppel show them-

selves to be, through Cobb as their agent, innocent purchasers without notice, whereby they will hold the land and coal, and Elkins will be denied specific performance of his contract, Elkins may have, very properly, an action sounding in damages against Howell for its breach; but such controversy ordinarily must be prosecuted at law, and not in equity, and in such controversy Moore and Keppel could have no interest whatever, so far as appears from the allegations of this bill. It seems to me clear that there is a "separable controversy" between plaintiff, Elkins, and the nonresident defendants, Moore and Keppel, one that is "wholly between" them as "citizens of different states," and one that "can be fully determined as between them," to wit, whether or not Moore and Keppel, under their deed, can hold the land and coal in controversy, or whether they must surrender and convey the same to Elkins.

The motion to remand is therefore overruled.