**NELSON v. CAMP MFG. CO. et al.**

Civ. A. No. 673.

District Court, E. D. South Carolina, Charleston Division.

April 20, 1942.

556

Nelson, Mullins & Grier, of Columbia, S. C., and Charlton DuRant, of Manning, S. C., for plaintiff.

M. W. Seabrook, of Sumter, S. C., for defendant.

TIMMERMAN, District Judge.

This is a motion to remand. The case as it now stands is the composite of two cases originating in the state court and consolidated by order of the state court before the removal proceedings were instituted. For the purposes hereof they will be referred to as the first case and the second case.

The *first case* was brought in August, 1936, by Francis Beidler, II, and Mrs. Elizabeth L. Beidler as sole directors and liquidating trustees of Santee River Cypress Lumber Company, a South Carolina corporation, against Andrew English, W. S. Nelson and Brooklyn Cooperage Company, in the Court of Common Pleas for Clarendon County, South Carolina.

Shortly thereafter an order was entered in the state court restraining the defend-ants pendente lite from committing certain alleged trespasses on the small parcel of land, the subject of the suit.

The Santee River Cypress Lumber Company was alleged to have been then in process of liquidating under applicable statutes of the State of South Carolina, with the Beidlers as its sole directors and liquidating agents.

The demand of the plaintiff was for judgment against the two first-named defendants for $2,000 as damages for alleged trespasses on the said parcel of land containing 23½ acres, more or less. No judgment was asked against the third defendant, Brooklyn Cooperage Company.

October 16, 1936 an order was entered in the state court refusing a motion of plaintiffs for a rule of survey. Thereupon the plaintiffs gave notice of intention to appeal to the State Supreme Court. Before the appeal was heard a consent order was entered remanding the cause to the Circuit Court to bring in additional parties and to give the litigants an opportunity to carry through a proposed compromise settlement of the case. Thereupon an order was entered directing the amendment of the summons and complaint so as to bring in additional parties defendant. Twenty-nine new defendants were added.

In the meantime one of the original defendants, W. S. Nelson, died testate. By an order dated November 25, 1939 his widow, Mrs. Nina Geddes Nelson, was substituted for the testator as party defendant, she being the executrix of his estate and the devisee of his interest in the lands in question. On the same date a decree was entered by which the twenty-nine added defendants, brought in by the amended summons and complaint, were adjudicated to have no interest in the premises in question.

In January 1941 an order was entered, on plaintiffs' motion, to require the defendants and the South Carolina Public Service Authority to show cause why the said Public Service Authority, a local corporation, should not be made a party to said action, and on September 19, 1941 an order was entered making the South Carolina Public Service Authority a party defendant and requiring the summons and complaint to be amended accordingly.

There were other motions and orders entered in the state court from time to time that need not be adverted to.

The *second case* was commenced sometime prior to June 28, 1941, by Mrs. Nina Geddes Nelson, the defendant substituted for W. S. Nelson in the first case, as plaintiff, against Camp Manufacturing Company, as defendant, for damages for alleged trespasses upon what appears to be the identical tract of land upon which trespasses were alleged in the first case. The summons and complaint in this second case were amended in July, 1941, pursuant to order of the state court, by making the South Carolina Public Service Authority a party defendant therein. The amended complaint alleged no cause of action against the added defendant, only that it was a South Carolina corporation and that it was made a party defendant pursuant to the order of court. The only relief asked by the amended complaint was against the defendant Camp Manufacturing Company for $3,000 damages for an alleged wrongful entry "upon a tract of land owned by and in the possession of the plaintiff herein", and for cutting, carrying away and destroying "timber and other growth thereon."

On August 11, 1941 Elizabeth L. Beidler and Francis Beidler, II, individually, First National Bank of Chicago, as trustee, Francis Beidler, II, as trustee under the last will and testament of Francis Beidler (deceased), and Santee River Cypress Lumber Company, by Francis Beidler, II, and Elizabeth Beidler, as sole directors and liquidating trustees, petitioned to be made parties defendant in said second case and for leave to appear and plead therein. An order was entered September 15, 1941 granting the prayer of said petition and allowing said petitioners twenty days within which to answer, demur, or otherwise plead. The plaintiff, in response to said order, served a second amended summons and complaint, making the named parties defendants but asking no judgment against them or either of them.

As their first move after being made parties defendant in said second case, on the 30th day of September 1941, said defendants Santee River Cypress Lumber Company, by Francis Beidler, II, and Elizabeth L. Beidler, as sole directors and liquidating trustees, Elizabeth L. Beidler and Francis Beidler, II, individually, First National Bank of Chicago, as trustee, Francis Beidler, II, as trustee under the will of Francis Beidler (deceased), filed a petition for the consolidation of the two said cases.

The petitioners, among other things, alleged that the second case, brought by Mrs. Nelson against Camp Manufacturing Company, was "principally a demand for damages for cutting timber on the same premises which are involved in the first action", that the Public Service Authority was in due course made a party defendant in said second case, and that it had "called in all of the remaining defendants therein on an alleged warranty", that said other defendants had "served a petition to be allowed to be made parties", and that they had by order of court been made parties.

They further alleged "that under the facts and circumstances above shown, the situation is the same as if there were another action already pending in this honorable court between the same parties, or their privies, in relation to the same subject matter; for the reason that South Carolina Public Service Authority claims under these petitioners and the other defendants besides Camp Manufacturing Company in the action second above captioned; and these petitioners allege that Camp Manufacturing Company claims under the South Carolina Public Service Authority." Also: "That if either the plea of title or possession set up in the previous action by the Plaintiffs Beidler, or their claim of a settlement is sustained, such will completely defeat the action brought by Mrs. Nina Geddes Nelson against Camp Manufacturing Company, et al.; as either plea is a complete defense to such action, the lands involved in both cases being identical, so far as the alleged trespasses go."

Then in the concluding paragraph of the petition, the petitioners alleged that a consolidation of the two cases would prevent a multiplicity of suits, save costs and conserve the time of the Court, and *"That the respective causes of action and defenses pleaded are so allied in substance, time and parties as to make them so akin that they should be consolidated."*

Upon this petition an order of consolidation was entered December 12, 1941, directing inter alia (a) that the two actions be "tried together as one action", and (b) "that the second amended * * * complaint heretofore served in the second action shall be the complaint in the consolidated action."

The 18th day of December following said order of consolidation the defendants Francis Beidler, II, Elizabeth L. Beidler, individually, the First National Bank of Chicago, as trustee, and Francis Beidler, II, as trustee under the last will and testament of Francis Beidler (deceased), served and filed their notice and petition for the removal of said cause to the federal court and executed and filed their removal bond.

In the petition for removal the petitioners alleged that the consolidated action was commenced, in so far as they were concerned, with the service of the second amended summons and complaint in the second case on September 17, 1941, that they had not answered and that the time therefor had been extended by order of court until ten days next after December 12, 1941, that the suit was one of a civil nature, being a suit ostensibly for damages, but one which necessarily included the trial of title to and possession of real estate, and that the complaint in the consolidated case alleged "in substance that the defendant Camp Manufacturing Company, without right or warrant of law, entered upon a tract of land owned by and in the possession of the plaintiff herein, and cut down, carried away and destroyed the timber and growth thereon; that the said acts were high-handed, wilful and malicious and in utter disregard and defiance of the rights of the plaintiff, to her damage in the sum of Three Thousand Dollars ($3,000.00) * * *".

Following this the petitioners alleged that Camp Manufacturing Company entered the premises claimed to have been trespassed upon under an authorization from the said Public Service Authority, a domestic corporation; that the Public Service Authority in turn claimed title to the land and the timber alleged to have been wrongfully cut and removed therefrom, under deeds from the petitioners as to the land and from the Brooklyn Cooperage Company as to the timber; that petitioners and Santee River Cypress Lumber Company were bound to defend any action affecting the title to the land conveyed to the Public Service Authority and that the Cooperage Company was bound to defend the title to the timber thereon; and that the South Carolina Public Service Authority had called upon the petitioners and the Santee River Cypress Lumber Company to defend said action in its behalf "under a covenant of warranty between said Authority and these petitioners, executed also by said Santee River Cypress Lumber Company, as alleged surety."

Further, the petitioners alleged that the Camp Manufacturing Company purchased the timber, claimed by the plaintiff to have been wrongfully cut and removed, from the Public Service Authority and that the Public Service Authority had acquired it from the Brooklyn Cooperage Company, which company had purchased it from the Santee River Cypress Lumber Company. Thus it appears that petitioners, never having been the owners of the timber, which was sold by their grantor before they took title to the land on which it is situate, are not concerned with any controversy about the alleged damage done the timber.

Continuing the petitioners alleged that the South Carolina Public Service Authority had made demand upon them and "Santee River Cypress Lumber Company, or its Liquidating Trustees, for reimbursement of any and all amounts and the value of the land and timber in case there be any judgment in this cause favorable to the plaintiff * * *, that there is a controversy in this cause between the said South Carolina Public Service Authority, which is a corporation under the laws of South Carolina, and these petitioners in reference to such alleged liability * * *," which controversy the petitioners claimed to be separable.

In this connection the petitioners for removal deny that the Public Service Authority can hold them "for reimbursement of any and all amounts and the value of the land and timber *in case there be any judgment in this cause favorable to the plaintiff*", for the reasons, inter alia (1) that "no liability can affix by the laws of South Carolina until there has been an eviction", and (2) "it is provided in the alleged agreement of warranty that should any action result in loss of title the said Authority, which is vested by law with powers of eminent domain, will exercise its powers of condemnation before which is done no liability of these petitioners can be determined."

This is another way of saying that a controversy may or may not arise between the petitioners and the Public Service Authority, depending on the settlement of the issue made by the complaint between

the plaintiff and the defendant Camp Manufacturing Company.

Petitioners also claimed a separable controversy between themselves and the plaintiff.

The petitioners for removal were joined in asking for the consolidation of the two cases by Santee River Cypress Lumber Company, the plaintiff in the first case, and Camp Manufacturing Company, the original defendant in the second case, but neither of said parties joined in the petition for removal after the consolidation of the two cases.

Of the parties defendant in the consolidated case, the South Carolina Public Service Authority and the Santee River Cypress Lumber Company are corporations of the State of South Carolina. The plaintiff is a local citizen and resident.

While the petitioners for removal, admittedly non-residents of South Carolina, are parties defendant in the consolidated case, no cause of action is stated against them by the plaintiff, and no relief is demanded at their hands. They are parties because they asked to be made defendants so that they could defend for a South Carolina corporation (South Carolina Public Service Authority), which in turn is defending for a non-resident corporation (Camp Manufacturing Company), which had waived its right of removal before petitioners voluntarily intervened herein, if indeed any such right ever existed. The last-mentioned defendant (Camp Manufacturing Company) is the only one against whom the plaintiff claims any relief.

It can hardly be said that this case is removable because of a separable controversy between the petitioners and the South Carolina Public Service Authority, both defendants in the consolidated action, since the petition for removal was served on the 18th day of December, 1941, before the defendant Public Service Authority had filed its answer. It is in this answer that the Public Service Authority invokes the warranties of title given it, as to the title to the land, by the petitioners and the Santee River Cypress Lumber Company and, as to the title to the timber, by the Brooklyn Cooperage Company. It is about the timber that the plaintiff brought her action for damages.

The primary action here is against the Camp Manufacturing Company. If the plaintiff recovers a judgment at all it will be against the Camp Manufacturing Company, not against the petitioners. The theory that the petitioners advanced for a separable controversy with the South Carolina Public Service Authority rests upon the claim that the South Carolina Public Service Authority sold the timber in question to the defendant Camp Manufacturing Company and warranted the title thereto, and that the petitioners sold the land whereon the timber is situate to the South Carolina Public Service Authority, and along with their codefendant Santee River Cypress Lumber Company, as surety, warranted the title to the land.

It is the petitioners' contention that since the Camp Company vouched the South Carolina Public Service Authority to defend the suit, and that the South Carolina Public Service Authority in turn vouched them and the Santee River Cypress Lumber Company to defend the suit under their warranty of title to the land, as well as the Brooklyn Cooperage Company to defend the suit under its warranty of title to the timber, this gives them a separable controversy with the Public Service Authority.

Clearly the issue of liability under any one or all of the alleged warranties can never arise and can never be settled until the primary issue tendered by the plaintiff's complaint has been first settled. Liabilities under the several warranties alleged are of necessity dependent upon the settlement of the original controversy between the plaintiff and the defendant Camp Manufacturing Company, the alleged wrongdoer.

In this connection the case of Von Herwarth v. Gristede Bros. et al., D.C., 20 F. Supp. 911, 912, is applicable. There the plaintiff and the original defendant were residents of the State of New York, in a court of which state the action was commenced. Pursuant to a New York statute the local defendant impleaded Armour & Company, a non-resident corporation, on the theory that certain alleged unwholesome meat, about which the action was brought, was a product of Armour & Company and had been sold by said company to the local defendant for re-sale. Armour & Company immediately removed the case to the federal court. On motion the case was remanded to the state court, the District Judge holding that there was no controversy wholly between the plaintiff and the removing non-resident defendant which

could be "fully determined as between them."

It was pointed out, and so it is in the instant case, that no demand could arise against the removing defendant until there had been a decision in favor of the plaintiff against the original defendant. Here, as it was there, the primary issue is between the original parties and any issue affecting the interests of the petitioners for removal is "merely incidental or auxiliary to the main issue."

The removing defendants may not shunt aside the controversy tendered by the complaint and substitute an issue or issues of their own selection and thus make the case removable when otherwise it would not be. Whether the added defendants will defend the suit in behalf of the original defendants, against whom alone a judgment is asked, is no concern of the plaintiff. The alleged controversy between the petitioners for removal and the Public Service Authority is entirely moot and will remain so until a favorable decision for the plaintiff on the main issue. If there is no liability on the part of the Camp Company to the plaintiff, then none of the other defendants can be called upon under the alleged warranties. Hence the interests of all the defendants are identical in wishing to defeat the cause of action alleged by the plaintiff. All other questions in the case are dependent on that issue.

The case of Torrence v. Shedd, 144 U.S. 527, 12 S.Ct. 726, 36 L.Ed. 528 disposes of this question of separable controversy (quoting from pages 530–532 of 144 U.S., page 727 of 12 S.Ct.) :

"But in order to justify such removal, on the ground of a separate controversy between citizens of different states, there must, by the very terms of the statute, be a controversy 'which can be fully determined as between them;' and, by the settled construction of this section, the whole subject-matter of the suit must be capable of being finally determined as between them, and complete relief afforded as to the separate cause of action, without the presence of others originally made parties to the suit. Hyde v. Ruble, 104 U.S. 407 [26 L.Ed. 823]; Corbin v. Van Brunt, 105 U.S. 576 [26 L.Ed. 1176]; Fraser v. Jennison, 106 U.S. 191, 1 S.Ct. 171 [27 L.Ed. 131]; Winchester v. Loud, 108 U.S. 130, 2 S.Ct. 311 [27 L.Ed. 677]; Shainwald v. Lewis, 108 U.S. 158, 2 S.Ct. 385 [27 L.Ed. 691]; Ayres v. Wiswall, 112 U.S. 187, 5 S.Ct. 90 [28 L.Ed. 693]; [Fidelity] Ins., [Trust & Safe Deposit] Co. v. Huntington, 117 U.S. 280, 6 S.Ct. 733 [29 L.Ed. 898]; Graves v. Corbin, 132 U.S. 571, 10 S.Ct. 196 [33 L.Ed. 462]; Brown v. Trousdale, 138 U.S. 389, 11 S.Ct. 308 [34 L.Ed. 987].

"As this court has repeatedly affirmed, not only in cases of joint contracts, but in actions for torts, which might have been brought against all or against any one of the defendants, 'separate answers by the several defendants sued on joint causes of action may present different questions for determination, but they do not necessarily divide the suit into separate controversies. A defendant has no right to say that an action shall be several which a plaintiff elects to make joint. A separate defense may defeat a joint recovery, but it cannot deprive a plaintiff of his right to prosecute his own suit to final determination in his own way. The cause of action is the subject-matter of the controversy, and that is for all the purposes of the suit, whatever the plaintiff declares it to be in his pleadings.' [Louisville & Nashville] Railroad v. Ide, 114 U.S. 52, 56, 5 S.Ct. 735 [29 L.Ed. 63]; Pirie v. Tvedt, 115 U.S. 41, 43, 5 S.Ct. 1034, 1161 [29 L.Ed. 331]; Sloane v. Anderson, 117 U.S. 275, 6 S.Ct. 730 [29 L.Ed. 899]; Little v. Giles, 118 U.S. 596, 601, 602, 7 S.Ct. 32 [30 L.Ed. 269]; [Thorn Wire] Hedge Co. v. Fuller, 122 U.S. 535, 7 S.Ct. 1265 [30 L.Ed. 1235]." See Winchester v. Loud, 108 U.S. 130, 2 S.Ct. 311, 27 L.Ed. 677 and Shainwald v. Lewis, 108 U.S. 158, 2 S.Ct. 385, 27 L.Ed. 691.

"Where defendants are interested in separate parts of the same subject-matter, no separate controversy is presented." Niccum et ux. v. Northern Assur. Co., et al., D.C., 17 F.2d 160, at page 162, citing Foster's Federal Practice, 6th Ed., Vol. 3, p. 2937.

Again the petitioners rest their claim of a separable controversy with the Public Service Authority on the theory that the Santee River Cypress Lumber Company, a local defendant, is not a necessary party thereto since said company is only a surety on an obligation assumed by the petitioners to protect the title they had given the Public Service Authority. This position is without merit since both the petitioners and the Santee River Cypress Lumber Company are bound by the terms of

the same obligation even if the petitioners may have signed the same as principal and the other as surety, Torrence v. Shedd, supra.

In Western Union Tel. Co. v. Brown, C. C., 32 F. 337, it was held: "Where, in an action on a bond against several defendants, one of them being the principal obligor, and the other his sureties, the only relief sought is a money judgment against all the defendants, there is, for the purpose of removal, but a single controversy in the case."

In Board of Levee Commissioners v. Hulse et al., D.C., 17 F.2d 785, 786, it is said: "Since the suit depends for jurisdiction entirely on diversity of citizenship, *and since the demand against both defendants arises out of the same contractual obligation, the surety's contention is in no better case.* There is but a single controversy presented. It is not separable. Lynes v. Standard Oil Co., D.C., 300 F. 812; Guarantee Co. [of North America] v. [Mechanics' Sav.] Bank [& Trust Co.], [6 Cir.], 80 F. 766; Id. [6 Cir.], 82 F. 545; Western Union Tel. Co. v. Brown [C.C.], 32 F. 337; City of Seattle v. Beer's Bldg. Co., D.C., 242 F. 988; Uden v. [Great Northern] Const. Co., D.C., 1 F.2d 743." (Emphasis added)

In Branchville Motor Co. v. American Surety Co. of New York, D.C., 27 F.2d 631, 632, our own Judge Cochran said: "If the plaintiff had brought its suit against the surety company and Carpenter on the bond executed by them, there would have been a joint cause of action stated, and, if Carpenter had been a resident of South Carolina, the suit would not have been removable."

Even conceding that the petitioners will have a bona fide controversy with the Public Service Authority in the event of the plaintiff sustaining her cause of action against the Camp Campany for trespass, it does not follow that such a contemplated controversy will operate as a basis for the removal of this case from the state to the federal court. Furthermore, the controversy upon which the petitioners depend exists, if at all, between them and the Santee River Cypress Lumber Company, a local defendant, on the one hand and the South Carolina Public Service Authority on the other. There could be no complete adjudication of the issue thus presented without the presence of the Santee River Cypress Lumber Company since it is bound by the same contract which binds the petitioners for removal. The petitioners earnestly maintain that the cases of Ellis v. Peak, D.C., 22 F.Supp. 908 and Greene v. Klinger, C.C., 10 F. 689, are conclusive of their right to removal. These cases were rested upon certain Texas statutes which permit warrantors to become parties defendant in suits to recover land and allows them to make defenses to the same effect as if they had been the original defendants in the actions. Reference to the decisions will disclose the language of the statutes.

The instant case is not one to recover land. The plaintiff alleges that she is in possession of the premises in question and that the Camp Company wrongfully trespassed thereon. The Supreme Court of the State of South Carolina has clearly distinguished between actions to try title to real estate or for the recovery of land and actions of trespass quare clausum fregit. See Beaufort Land & Investment Co. v. New River Lbr. Co., 86 S.C. 358, 362, 68 S.E. 637, 30 L.R.A.,N.S., 243; Lucius v. Du Bose, 114 S.C. 375, 103 S.E. 759; Battle v. De Vane, 140 S.C. 305, 138 S.E. 821; Santee River Cypress Lbr. Co. v. Elliott, 153 S.C. 179, 150 S.E. 683; Bethea v. Home Furniture Co., 185 S.C. 271, 194 S.E. 10, and cases cited therein.

The attorney for the petitioners in his brief admits that the action with which we are here concerned is one of trespass quare clausum fregit.

The plaintiff alleges possession of the premises in question. She is not seeking to dispossess anyone, not even the real defendant Camp Manufacturing Company. She only asks damages for an alleged wrongful trespass on the premises in her possession, and her recovery cannot exceed the amount sued for, $3,000. This demand is made solely against the Camp Manufacturing Company, and nothing is asked against the removing defendants. They, along with Santee River Cypress Lumber Company, a local defendant, are in the case voluntarily, or because of a request from the South Carolina Public Service Authority, which in turn is in at the request, so it is said, of the Camp Manufacturing Company, the real defendant in interest so far as the plaintiff is concerned. The plaintiff, if she desired to do so, could not maintain an action against the remov-

ing defendants, or against the South Carolina Public Service Authority, because of alleged tortious acts ·on the part of the defendant Camp Manufacturing Company. There is no contention that the plaintiff was a party to the contract of warranty mentioned in the petition for removal, or to any other contract that may have been entered into by any of the defendants, either among themselves or with a third party, nor has it been made to appear that any contract relied upon by the removing defendants was made for the benefit of the plaintiff, or that she has any rights thereunder.

It is true that Rule 22 of the Circuit Courts of South Carolina permits a grantor of real estate when he is vouched by his grantee, after a suit brought against his grantee "to recover the possession of real estate", to apply to a circuit judge for permission to come in and make such additional defenses to the action brought against his grantee as he may desire. This applies only to suits to recover possession of real estate and not to suits for damages for alleged wrongful trespasses thereon.

It is also true that a statute of South Carolina, Section 489 of the Code of 1932, permits a defendant in an action at law to bring a cross-action against a codefendant or codefendants therein, provided such alleged cross-action arises out of the "same transaction, or acts, or negligence, or wrong set forth in plaintiff's complaint." In the instant case the removing defendants' alleged controversy with their codefendant South Carolina Public Service Authority does not arise out of the alleged wrong done the plaintiff by the defendant Camp Manufacturing Company, and any such controversy would only be ripe for settlement after a settlement of the issues made by the complaint in favor of the plaintiff. If the petitioners are right in denying the validity of the plaintiff's alleged cause of action, then the controversy upon which they base their right of removal will never be ripe for hearing. Besides the local defendant, Santee River Cypress Lumber Company, would be a proper and necessary party in the controversy tendered by the petitioners, if it is ever ripe for hearing, which fact destroys an essential characteristic of the right of removal, diversity of citizenship.

In this connection it should be noted that the answer of the South Carolina Public Service Authority, wherein it was alleged that the petitioners for removal and the Santee River Cypress Lumber Company "entered into a written agreement with this defendant (South Carolina Public Service Authority) wherein and whereby they agreed to defend in behalf of this defendant any action involving the title to said land, including lands described in the complaint, and to hold this defendant harmless from any loss occasioned thereby", was not filed until after the petition for removal had been filed. Hence at the time of the filing of the petition for removal no controversy, whether separable or not, was then pending in the state court between the petitioners and said Public Service Authority.

The petitioners further contend that they have a separable controversy with the plaintiff. The pleadings at the time of the removal discloses no such controversy. The only reference made to the petitioners for removal in the complaint will be found in paragraph 8 thereof, which reads as follows: "VIII. That Plaintiff is informed and believes that Santee River Cypress Lumber Company was chartered as a South Carolina Corporation, but Defendants claim that it was duly dissolved and that the Defendants Francis Beidler, II, and Mrs. Elizabeth L. Beidler were and are sole Directors and Liquidating Trustees, and that Francis Beidler, II, and Elizabeth L. Beidler, individually, and The First National Bank of Chicago as Trustee and Francis Beidler as Trustee claim the beneficial ownership of all the property of the Corporation Santee River Cypress Lumber Company and liability for all of its obligations, and that all said parties were made parties defendant by Order of Court made in this action."

No cause of action is stated against the petitioners in the complaint, and no relief is asked at their hands. The only relief asked is against the defendant Camp Manufacturing Company, and that in the sum of $3,000 as damages for alleged trespasses upon real property in the possession of the plaintiff. If the petitioners had ignored the summons and complaint, their default would not have entitled the plaintiff to any judgment against them.

There is another reason why jurisdiction cannot be sustained in the federal court, the jurisdictional amount is lacking. I see no force in the contention

that the value of the land alleged to have been trespassed upon should be added to the sum claimed by the plaintiff as damages for trespasses thereon. It is true that the question of title to the real estate whereon the trespasses are alleged to have been committed may be brought into the case incidentally, but such an issue, if raised, will be a collateral question and be subordinated to the main issue tendered by the complaint. That does not change the fact that the primary issue involved is the question of damages in a sum not exceeding $3,000.

■ The case of Wabash Ry. Co. v. Vanlandingham et al., 8 Cir., 53 F.2d 51, is here in point. There, it is said:

"The action was one in damages and the amount sued for fixed the amount in controversy. The fact that the right of plaintiffs to recover involved the validity of a contract the performance of which might have required the expenditure of a sum of money in excess of the jurisdictional amount, or the breach of which might in the future subject defendant to the payment of additional damages, did not give the District Court jurisdiction. The contract did not fix the measure of damages for its breach. It did not require the defendant to pay any specific amount. The failure to construct and maintain the ditch may or may not subject defendant to damages to these plaintiffs in the future.

"In determining jurisdiction the defendant cannot calculate a contingent loss based upon the probative effect of a judgment against it, nor can it include the cost of constructing a ditch which would protect it against future damage. *The judgment asked did not require the construction of the ditch.* The defendant was to be left free to do as it pleased. The only relief sought was $1500. Future damages were a mere contingency whether the ditch was constructed or not." (Emphasis added.)

In the case of Mutual Life Ins. Co. v. Moyle, 4 Cir., 116 F.2d 434, 435, it is forcefully said: "It is well settled that, in a suit by the insured to recover disability benefits under policies such as we have here, the amount involved for purposes of jurisdiction is the amount of the disability benefits for which suit is brought. Equitable Life Assur. Soc. v. Wilson, 9 Cir., 81 F. 2d 657. And this is true, although the probative effect of the judgment may be

to establish the right of the insured to recover sums far in excess of the jurisdictional amount. Indeed the rule is applied with respect to suits to recover instalments of interest on bonds, where the recovery may be absolutely determinative of the right to recover in future cases. New England Mortgage Security Co. v. Gay, 145 U.S. 123, 12 S.Ct. 815, 816, 36 L.Ed. 646. In the case last cited the court said: 'It is well settled in this court that, when our jurisdiction depends upon the amount in controversy, it is determined by the amount involved in the particular case, and not by any contingent loss either one of the parties may sustain by the probative effect of the judgment, however certain it may be that such loss will occur. * * * In Troy v. Evans, 97 U.S. 1, (24 L.Ed. 941), action was brought to recover certain installments upon bonds, the aggregate of which bonds exceeded $5,000, but the judgment was for less. The case was dismissed, although it appeared that the judgment would be conclusive in another action upon future installments upon the same bonds. A like ruling was made in [Town of] Elgin v. Marshall, 106 U.S. 578, 1 S. Ct. 484 (27 L.Ed. 249), where a judgment was rendered for $1,660.75, against a town, on interest coupons detached from bonds which it had issued under a statute claimed to be unconstitutional. The case was dismissed in an elaborate opinion by Mr. Justice Matthews although it appeared that the judgment might be conclusive as an estoppel in any subsequent action upon other coupons, or upon the bonds themselves. So in (New Jersey) Zinc Co. v. Trotter, 108 U.S. 564, 2 S.Ct. 875 (27 L.Ed. 828), an action of trespass wherein the plaintiff recovered judgment for less than $5,000, the case was dismissed, although the court indicated that the jury were compelled to find the plaintiff had title to the land, and "that in this way the verdict and judgment may estop the parties in another suit, but that will be a collateral, not the direct, effect of the judgment." ' "

In Enger v. Northern Finance Corporation, D.C., 31 F.2d 136, 140, it is said: "In the case of New Jersey Zinc Co. v. Trotter, 108 U.S. 564, 2 S.Ct. 875, 27 L.Ed. 828, it appears that Trotter brought an action against the New Jersey Zinc Company for entering on his lands and digging up and carrying away a quantity of ore. The defendant entered a denial, and no other issue was raised by the pleadings. Trotter

564

recovered a judgment for less than $5,000. The Zinc Company appealed, and Trotter moved to dismiss because the matter in dispute did not exceed $5,000. It had been determined in Hilton v. Dickinson, 108 U. S. 165, 2 S.Ct. 424, 27 L.Ed. 688, that the jurisdiction of the Supreme Court was limited to suits in which the matters in dispute exceeded $5,000. Chief Justice Waite said: 'It may be that the question actually litigated below related to the title of the parties to the land from which the ore in controversy was taken, and that the verdict will be conclusive on that question as an estoppel in some other case; but, as was also said at the present term, in [Town of] Elgin v. Marshall, 106 U.S. 578 (1 S.Ct. 484, 27 L.Ed. 249), for the purpose of estimating the value on which our jurisdiction depends, reference can only be had to the matter actually in dispute in the particular cause in which the judgment to be reviewed was rendered, and we are not permitted to consider the collateral effect of the judgment in another suit between the same or other parties. It is the money value of what has been actually adjudged in the cause that is to be taken into the account, not the probative force of the judgment in some other suit. Here the thing, and the only thing, adjudged is that the zinc company was guilty of the particular trespass complained of, and must pay Trotter $3,320 for the ore taken away. Had the zinc company pleaded title to the land from which the ore was taken, and issue had been joined on that plea, a different question would have been presented. In that way, the land might have been made the matter for adjudication, and thus the matter in dispute on the record. But, as this case stands, only the possession of Trotter and his right to the ore are involved. It may be that, in order to find possession in Trotter, the jury were compelled to find that he had title to the land, and that in this way the verdict and judgment may estop the parties in another suit, but that will be a collateral, not the direct, effect of the judgment.' "

For the reasons stated, and others, I am of the opinion that this case was improperly removed to the federal court and that it should be remanded to the state court for trial.

On the presentation thereof I will sign an order remanding the case to the state court from whence it came for trial.